STATE of Missouri, Plaintiff–Respondent,

v.

Ronnie Carl ROBINSON, Defendant–Appellant.

No. 25131.

Missouri Court of Appeals, Southern District, Division Two.

June 19, 2003.

Petition for Rehearing and Transfer Denied July 3, 2003.

Application for Transfer Denied Aug. 26, 2003.

Amy M. Bartholow, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Mazza Follett, Asst. Atty. Gen., Jefferson City, for respondent.

JAMES K. PREWITT, Presiding Judge.

Ronnie Carl Robinson ("Appellant") was charged in Scott County by amended information with the class A felony of trafficking in the second degree (§ 195.223.3) and the class B felony of possession of a controlled substance with the intent to distribute (§ 195.211). On a motion for change of venue, the case was transferred to Mississippi County.

Following a jury trial on July 11, 2002, Appellant was convicted and sentenced as a prior and persistent felony offender to fifteen years' imprisonment on the first count, and ten years' imprisonment on the second count, with both sentences to be served concurrently. Appellant appeals.

On June 29, 1999, Bobby Sullivan, an investigator at the Scott County Sheriff's Department, and two other officers initiated a "knock and talk" interview with

Tonya Ray, Appellant's girlfriend, at her home in Sikeston. Sullivan informed her that he had received information that Appellant was storing narcotics at her home and requested that she let them inside. Only Sullivan was allowed inside. Tonya, who was eight months pregnant at the time and experiencing difficulty with her pregnancy, became upset and called her mother, Mary. Sullivan spoke with Mary and told her the information the informant had provided. Mary said she was on her way over to her daughter's home.

Tonya denied that any such contraband was in her house, but when Sullivan told her he knew the drugs were in the northwest bedroom of the house and also present were two weight scales, Tonya took Sullivan to the bedroom. In the bedroom, Sullivan found two weight scales and two duffel bags containing marijuana and crack cocaine.

After the officers left the residence, they observed Appellant driving in the direction of Tonya's house. They returned to the house and saw Appellant walking toward the house and called to him. Appellant ran into a wooded area where he hid. After a search, the officers arrested Appellant.

Sullivan transported Appellant from Sikeston to Benton and engaged Appellant in conversation along the way. The officer testified that Appellant

> [W]as upset, crying, saying his life was over .... that he—he would never be able to take care of his family now, he was going to lose his family and lose his life; that he wasn't a bad guy; he wasn't involved in any shootings, ... he was just trying to take care of his family [and] had a lot pressure ... because his younger brothers and sisters had looked up to him to take care of them also since his parents had died.

When Sullivan inquired whether the drugs were Appellant's or Tonya's, he testified that Appellant stated: "I can't let her go down for something I did." However, on cross-examination, and reading directly from his report, Sullivan stated that Appellant had said, "I can't let her take any of the blame for this."

When Sullivan was questioned regarding statements made to him by Tonya Ray concerning the ownership of the drugs found at her home, he testified that initially she stated the drugs were hers. Later, in a subsequent interview, she told Sullivan that "the drugs belonged to a cousin from Kansas City ... [with] the nickname of Bones." Finally, in November, 2001, after Tonya was arrested and charged in connection with this case, she told Sullivan that the drugs belonged to Appellant. Latent fingerprints found on one of the bags containing the drugs were those of Tonya Ray. No other prints were found.

Tonya Ray testified at Appellant's trial and stated that she had been trying to protect Appellant because she still loved him and they had three children together. Tonya testified that Appellant had previously kept marijuana at her home, but she had not seen him with crack cocaine before. She admitted telling Sullivan that the drugs he found belonged to Appellant and that she had at times gone with Appellant to get the drugs. Tonya also testified that Appellant had told her to "stick to her story" and asked her to write a statement denying knowledge of who owned the drugs, telling her what to write and instructing that it should be notarized.

There was also testimony from Tonya's mother that she had met Appellant on the way to her daughter's after the police had searched her home, and Appellant asked her to open the back door to Tonya's home for him.

In his sole point relied on, Appellant contends that "[t]he trial court abused its discretion in overruling defense counsel's hearsay objection and allowing" the testimony of an investigating officer "regarding statements made by an unidentified confidential informant." The testimony to which Appellant objected follows:

Q. [by Prosecutor] Now, on June 29, 1999, what information had you received regarding 328 Sunset in Sikeston, Missouri?

[DEFENSE COUNSEL]: Objection. Hearsay.

[PROSECUTOR]: Goes to the—explain why he went there, Your Honor.

THE COURT: Overruled.

THE WITNESS: I'd received a call from a reliable source that Ronnie Robinson was keeping approximately 14 pounds of marijuana and anywhere from six to nine ounces of crack cocaine in the residence of Tonya Ray at 328 Sunset.

The witness repeated the information he received from the unidentified informant two more times during his testimony: first, when asked what he told Appellant's girlfriend; and, second, when asked what he told her mother. The prosecutor also referred to the same testimony in his closing argument before the jury. Reference to the informant's information was again made when the jury, after deliberations began, inquired of the court, "What did the informant say?" The trial court responded, "You must base your decision upon the evidence as you recall it."

Appellant contends that the above-referenced testimony was inadmissible hearsay that was prejudicial to Appellant and "was offered, and later argued, to prove the truth of the matter asserted and not to show subsequent conduct by the police." According to Appellant, the court's "response instructed [the jury] to recall highly prejudicial hearsay testimony that never

should have been admitted in the first place, thereby denying [Appellant] of his right to a fair trial." We agree.

Hearsay statements are out-of-court statements used to prove the truth of the matter asserted, and are generally inadmissible. *State v. Barnett,* 980 S.W.2d 297, 306 (Mo.banc 1998). Because the person who provides the information about that which another testifies is not under oath and is not subject to cross-examination, hearsay evidence is objectionable. *State v. Bowens,* 964 S.W.2d 232, 240 (Mo. App.1998). However, a statement offered to explain subsequent conduct by the police and to supply background and continuity is not considered hearsay and is admissible. *State v. McNeal,* 986 S.W.2d 176, 179 (Mo.App.1999).

When ruling on the admission or exclusion of evidence at trial, trial courts have broad discretion, and absent a clear abuse of that discretion, this Court will not disturb the trial court's ruling on such evidence. *State v. Robinson,* 90 S.W.3d 547, 550 (Mo.App.2002). Furthermore, on claims involving error in the admission of evidence, "this Court reviews for prejudice, not mere error, and we will reverse only if the error was so prejudicial that it deprived Defendant of a fair trial." *State v. Russell,* 872 S.W.2d 866, 869 (Mo.App. 1994). "If evidence is competent under any theory, or for any purpose, the trial court cannot be convicted of reversible error for admitting it." *Id.*

Appellant relies on *State v. Shigemura,* 680 S.W.2d 256 (Mo.App.1984), in which defendant had been convicted of receiving stolen property. There, a police officer testified that an informant revealed to him that the defendant possessed stolen property. The Eastern District reversed and remanded the judgment, holding that the officer's testimony was inadmissible hear-

say from which the jury could have inferred defendant's guilt from the informant's statement.

As in the instant appeal, there was no limiting instruction given to the jury regarding how the jury was to consider the informant's statement, thus exacerbating the "high probability of prejudicial impact on the jury." *Id.* at 257. In addition, *Shigemura* also states that evidence presented regarding defendant's knowledge that the items in his possession were stolen "was not overwhelming." *Id.*

Appellant also cites *State v. Kirkland,* 471 S.W.2d 191, 194–95 (Mo.1971), where an arresting officer was allowed to testify that he was told by a woman he identified as Mrs. Mayo that she saw defendant and another leave in a cab which was later robbed. Here, too, there was little evidence to connect the defendant with the charged crime other than the hearsay statements. The Missouri Supreme Court ruled that the statements were offered for the truth of the matter asserted, constituting prejudicial hearsay and that admission of the statements denied defendant his right of cross-examination. *Id.* at 194. In *Kirkland,* the issue for the jury was one of defendant's identification, to which the officer was allowed to testify to the identification made by Mrs. Mayo. Mrs. Mayo did not testify. The court found that such testimony incriminated defendant and went "directly to the issue of identification and consequently to the issue of guilt." *Id.* at 195. The judgment was reversed and remanded for a new trial.

■■■ Defendant bears the burden of proving that a reasonable probability exists that the jury's verdict would have been different but for such improperly admitted evidence. *State v. Rose,* 86 S.W.3d 90, 102 (Mo.App.2002). Improperly admitted evidence which is cumulative of other properly admitted evidence is not prejudicial unless it is outcome determinative. *State v. Bell,* 62 S.W.3d 84, 92 (Mo.App.2001). If "the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence[,]" we conclude that such prejudice is outcome-determinative. *State v. Roberts,* 948 S.W.2d 577, 592 (Mo.banc 1997), *cert denied,* 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998).

■■■ In the instant appeal, that there was prejudice to the Appellant in the admission of the hearsay testimony may be established by the jury's inquiry to the trial court during deliberation. It is likely that the jury to some extent focused upon the testimony and was possibly influenced by it to a certain degree. "[I]mproperly admitted evidence should not be declared harmless unless it can be said to be harmless without question and the record demonstrates the evidence did not influence the jury or the jury disregarded it." *Russell,* 872 S.W.2d at 869. "In a jury trial, when evidence is admitted that should have been excluded, this court is required to assume that the jury considered that evidence as it reached its verdict." *Gates v. Sells Rest Home, Inc.,* 57 S.W.3d 391, 396 (Mo.App.2001).

It was prejudicial error to allow the officer to testify that Appellant was keeping marijuana and crack cocaine at the residence. To explain the subsequent conduct of law enforcement, it was adequate for the officer to testify that the reason they went to the address was because of information received from the informant that marijuana and crack cocaine were present there. However, to allow the officer to testify that Appellant was "keeping" marijuana and crack cocaine at the resi-

dence went beyond the scope necessary to show subsequent conduct of law enforcement and was prejudicial.

The judgment is reversed and the cause is remanded for a new trial, consistent with this opinion.

PARRISH and SHRUM, JJ., concur.