STATE of Missouri, Plaintiff–
Respondent,

v.

David B. GARRETT, Defendant–
Appellant.

No. 25108.

Missouri Court of Appeals,
Southern District,
Division One.

April 21, 2004.

Amy B. Bartholow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Adriane Dixon Crouse, Assistant At-

torney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

On September 29, 2003, this court issued an opinion in this cause. On November 25, 2003, by order of the Supreme Court of Missouri, this cause was transferred to that court. On April 16, 2004, the Supreme Court entered an order re-transferring the cause to this court. The original opinion of this court, which follows, is now readopted and reissued.

A jury convicted David B. Garrett ("Appellant") of one count of possession of more than five grams of marijuana with the intent to distribute, and one count of possession of methamphetamine with the intent to distribute, both violations of Section 195.211.[1] The trial court sentenced Appellant, a prior and persistent drug offender, to two consecutive terms of twenty years imprisonment without the possibility of probation or parole. In three points, Appellant assigns error to the trial court in its admission of certain testimony and exhibits, and its failure to declare a mistrial *sua sponte* after the prosecutor's allegedly improper reference to Appellant's right not to testify. We reverse and remand for new trial.

Appellant does not challenge the sufficiency of the evidence supporting his convictions. Viewed in the light most favorable to the verdicts, the evidence revealed the following: James Altic ("Altic"), an officer with the Joplin, Missouri police department, was assigned to that department's narcotics unit in March 2001 when he received information suggesting that drug-related activity was occurring regularly at a house located at 1624 Virginia in Joplin ("1624 Virginia"). Specifically, a confidential informant told Altic that Appellant was selling narcotics from his residence at that location.

Altic's initial response to the information provided by the confidential informant was to begin surveillance at 1624 Virginia. In the course of his surveillance, he observed Appellant entering and leaving the residence and noted that Appellant's car was parked outside the house. A check of police records revealed a previous report in which Appellant had listed 1624 Virginia as his address. Altic consulted the officer who had filed that report and the officer confirmed that Appellant lived at 1624 Virginia.

Based upon the confidential informant's tip, and his own investigation, Altic obtained a search warrant for 1624 Virginia, which was executed at approximately noon on March 16, 2001. Out of concern for their safety, the officers executing the warrant coaxed Appellant to come out of the residence under the pretext of informing him that his parked vehicle had been struck by another car. The ruse was successful, and Appellant came out of the residence, wearing only blue jeans, and went with officers to the side of the residence, where he was detained. Other officers entered the house to "clear" it of any danger and discovered another person, Samantha Overstreet ("Overstreet"), in the house. She was detained as well.

After the house was "cleared," Altic waited with Appellant in an upstairs living room of the residence while other officers searched the house. In the course of that search, Officer Matt Cowdin ("Cowdin") and Larry Stout ("Stout") found several items in an upstairs bedroom dresser, including thirteen bags of marijuana, two loaded handguns and $400 in cash. On a bed in the same room, the officers found $744 in cash in a wallet underneath a

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

pillow. In a closet in the bedroom, Stout discovered a bag of marijuana weighing over 100 grams. A box located on the floor next to the dresser contained 84 green or clear "baggies" filled with a white powder later determined to be methamphetamine, several empty "baggies," scales, pills, a mirror, and rolling papers. The officers also noted both men's and women's clothing scattered on the floor throughout the room. Also seized were nine letters addressed to Appellant at 1624 Virginia and in the possession of Robert Nance, who lived in the back half of the house.

Subsequent to the seizure of these items, Appellant was placed under arrest. At that time, Altic discovered and seized ten small green and clear "baggies" containing a white powder later determined to be methamphetamine from the front watch pocket of the jeans Appellant was wearing. Altic did not, however, submit these baggies to the officer in charge of collecting evidence at the scene but, instead, gave them to the officer some time later at the police station, claiming they had been seized from Appellant's front pocket. Appellant requested that he be given his shirt, wallet, and shoes before being taken away. Cowdin complied with that request, after seizing the cash from the wallet found under the pillow. Appellant did not deny that the wallet, which contained no identification, or the shoes and shirt he was given, belonged to him.

Appellant did not testify at trial, but proffered the testimony of the owner of a rental house, who authenticated a document purporting to be a rental agreement between the witness and Appellant for the rental of a house at 1620 Virginia, signed prior to the raid that led to Appellant's arrest. Appellant also presented the testimony of an employee of a local utility company to authenticate a signed request of Appellant for the initiation of electrical service at 1620 Virginia. At the close of evidence, Appellant was found guilty as charged and sentenced at a later hearing as indicated above. This appeal followed.

In Appellant's first point, he claims that the trial court abused its discretion when it overruled Appellant's numerous hearsay objections to repeated references in opening statement, during Altic's testimony, and in closing argument, to statements made by the confidential informant connecting Appellant to the drug activity at 1624 Virginia. Appellant argues these references fit the classic definition of hearsay and that he was prejudiced by their admission due to the otherwise "tenuous" connection between Appellant and the address where the drugs were seized. Although we do not agree with Appellant's characterization of the nature of his connection with the residence where the drugs were seized, we do agree that he was unduly prejudiced by the repeated recitals of hearsay.

During the State's opening statement, the prosecutor told the jury that the search warrant for 1624 Virginia was served pursuant, in part, to information given to Altic by a confidential informant who stated that Appellant was dealing drugs from his home at that address. Appellant objected to any reference to the confidential informant's statement on the ground that it was hearsay. The prosecutor responded by stating that the statement was offered not for its truth but to explain the subsequent conduct of Altic. Appellant's objection was overruled.

During Altic's testimony, he was asked on direct examination to relate to the jury what he was told by the confidential informant. Appellant twice renewed his hearsay objection and was again overruled when the prosecutor told the court that the informant's statement was offered not

for its truth but to explain Altic's subsequent conduct. Altic proceeded to testify that a confidential informant told him that Appellant was selling drugs from his home at 1624 Virginia.

In the course of the State's closing argument, the prosecutor made the following statement: "Now, how else can [sic] connect some more dots here? And you remember [Altic] told you about what his crime unit does, how they develop informants.... The informant told Altic that [Appellant] was dealing drugs out of his house." Appellant's immediate hearsay objection was overruled, and the prosecutor continued, in his final closing argument, to refer to the informant's statement concerning Appellant dealing "dope" from 1624 Virginia.

■ In considering claims of error arising out of the admission or exclusion of evidence, we remain mindful of the broad discretion enjoyed by the trial court in making such decisions; absent an abuse of that discretion, the admission or exclusion of evidence is undisturbed by this court. *State v. Robinson*, 90 S.W.3d 547, 550 (Mo. App. S.D.2002). We review such claims of error "for prejudice, not mere error, and we will reverse only if the error was so prejudicial that it deprived [an appellant] of a fair trial." *State v. Russell*, 872 S.W.2d 866, 869 (Mo.App. S.D.1994).

■ Appellant contends that the confidential informant's statement to Altic constituted inadmissible hearsay in that it was "in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant." *State v. Harris*, 620 S.W.2d 349, 355 (Mo. banc 1981). Appellant correctly argues that the "underlying rationale for the hearsay rule is that 'for the purpose of seeking trustworthiness of testimonial assertions, and of affording the opportunity to test the credit of the witness, such assertions are to be made in court, subject to cross-examination.'" *Id.* (quoting *State v. Chernick*, 280 S.W.2d 56, 60 (Mo.1955)).

■ The State, in response, notes a longstanding exception to the rule excluding hearsay, namely, that "statements made by out-of-court declarants that explain subsequent police conduct are admissible, supplying relevant background and continuity." *State v. Dunn*, 817 S.W.2d 241, 243 (Mo. banc 1991). The rationale for this exception is that by admitting hearsay statements for this limited purpose "the triers of fact can be provided a portrayal of the events in question, more likely to serve the ends of justice in that the jury is not called upon to speculate on the cause or reasons for the officers' subsequent activities." *State v. Brooks*, 618 S.W.2d 22, 25 (Mo. banc 1981).

Appellant relies in part upon *State v. Shigemura*, 680 S.W.2d 256 (Mo.App. E.D. 1984), where the defendant, who had been convicted of receiving stolen property, was granted a new trial due to the trial court's erroneous admission, over hearsay objections, of a police officer's testimony concerning an out-of-court statement by a confidential informant. *Id.* at 257–58. *See also Moore v. United States*, 429 U.S. 20, 21–22, 97 S.Ct. 29, 50 L.Ed.2d 25, 28 (1976) (reversal of conviction of heroin possession based in part upon an officer's recital of an informant's extra-judicial statement).

This court too has recently considered a claim of error similar to that addressed in the instant case. In *State v. Robinson*, 111 S.W.3d 510 (Mo.App. S.D.2003), the appellant alleged prejudicial abuse of discretion in the trial court's admission of the out-of-court statements of an informant who told police that the appellant was "keeping" controlled substances in the

home of his girlfriend. *Id.* The trial court overruled hearsay objections of the appellant on the same basis as did the trial court here—that the statements went to explain subsequent conduct of police officers. *Id.* We reversed for a new trial, holding that it "was prejudicial error to allow the officer to testify that [the appellant] was keeping marijuana and crack cocaine at the residence." *Id.* at 514. Addressing the longstanding exception to the hearsay rule upon which the State bottoms its argument here, and upon which the trial court apparently based its ruling, we stated in *Robinson* that

> [t]o explain the subsequent conduct of law enforcement, it was adequate for the officer to testify that the reason they went to the address was because of information received from the informant that marijuana and crack cocaine were present there. However, to allow the officer to testify that [the appellant] was "keeping" marijuana and crack cocaine at the residence went beyond the scope necessary to show subsequent conduct of law enforcement and was prejudicial.

*Id.* at 514–15. *See also State v. Kirkland,* 471 S.W.2d 191, 194–95 (Mo.1971); *Shigemura* at 257–58 (testifying officer who related contents of a conversation with an informant "could have characterized his reason for being at [the scene of the alleged crime] without, in effect, having testimony of an absent and unknown witness").

Thus, while cases such as *Dunn* and *Brooks* clearly carve out an exception to the hearsay rule that allows for the "supplying [of] relevant background and continuity" to an officer's recital of events, *Dunn* at 243, we acknowledged in *Robinson* that this exception is susceptible to abuse. Such misuse of the exception appears to have occurred here as well. The prosecutor elicited testimony from Altic that an informant told him that Appellant was dealing drugs at 1624 Virgina. It would have been more than sufficient, if the State wished to provide the jury a context in which to view Altic's subsequent actions, for Altic to have testified that "he approached [Appellant] or went to [1624 Virginia] by stating that he did so 'upon information received.'" *State v. Bankston,* 63 N.J. 263, 307 A.2d 65, 68 (1973) (quoting McCormick, Evidence § 248 (2d ed.1972)).

Moreover, the State's claim that the informant's statements to Altic were not offered for their truth is belied by the prosecutor's repeated admonitions in closing argument that the jury use the informant's statements to "connect some more dots" regarding Appellant's knowledge of and participation in drug activity taking place at 1624 Virginia. These comments betray to us the use, whether intentional or inadvertent, of the hearsay statements of the informant to connect Appellant to illegal activity at 1624 Virginia, thereby eviscerating the State's claim that it was used only to provide needed context to Altic's testimony. It was error for the trial court to admit these statements.

 In finding that the statements of the confidential informant were admitted in violation of the hearsay rule we are mindful of the rule that Appellant "bears the burden of proving that a reasonable probability exists that the jury's verdict would have been different but for [the] improperly admitted evidence." *Robinson* at 514 (citing *State v. Rose,* 86 S.W.3d 90, 102 (Mo.App. W.D.2002)). Unless the improperly admitted evidence is "outcome determinative," we do not reverse the trial court's ruling when the evidence in question is cumulative of properly admitted evidence. *Id.* (citing *State v. Bell,* 62 S.W.3d 84, 92 (Mo.App. W.D.2001)). Unless the "erroneously admitted evidence so

influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence," any prejudice suffered by an appellant is deemed not to be outcome determinative. *State v. Roberts,* 948 S.W.2d 577, 592 (Mo. banc 1997), *cert. denied,* 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998). We also note, however, that "improperly admitted evidence should not be declared harmless unless it can be said to be harmless without question and the record demonstrates the evidence did not influence the jury or the jury disregarded it." *Robinson* at 514 (quoting *Russell* at 869). Moreover, "[i]n a jury trial, when evidence is admitted that should have been excluded, this court is required to assume that the jury considered that evidence as it reached its verdict." *Id.* (quoting *Gates v. Sells Rest Home, Inc.,* 57 S.W.3d 391, 396 (Mo.App. S.D.2001)).

██ In *Robinson,* and the cases primarily relied upon by Appellant, the reviewing courts found that, had the offending hearsay evidence been properly excluded, the remaining evidence of guilt was sufficiently tenuous to mandate a finding of prejudice requiring reversal. *See Moore,* 429 U.S. at 21–22, 97 S.Ct. 29, 50 L.Ed.2d 25; *Shigemura* at 257 (evidence of appellant's knowledge that property he possessed was stolen "was not over-whelming" sans improperly admitted hearsay). Here, the question whether Appellant resided at 1624 Virginia and, thus, was in at least constructive possession of the drugs found in the upstairs bedroom, was a critical issue of fact for the jury, and the evidence pertaining thereto was conflicting. The inappropriately admitted hearsay state-

ments of the informant went directly to that issue.

The State argues that any prejudice that accrued to appellant by the admission of those statements was outweighed by "ample" evidence of Appellant's guilt. The State points to Altic's observation of Appellant's frequent trips to and from 1624 Virginia, Appellant's previous acknowledgment of his residence there in a police report, his state of semi-undress when officers served the search warrant, the presence of men's clothing in the bedroom, the wallet under the pillow, eight letters addressed to Appellant at 1624 Virginia, the drugs found in Appellant's jeans pocket, and the drugs, weapons, and drug paraphernalia found in the bedroom. In this regard, the State argues, the facts in *Shigemura, Moore, Kirkland* and *Robinson* are distinguishable from the facts here in that the evidence of Appellant's guilt is more substantial.

To be sure, evidence that Appellant was guilty of possessing a controlled substance, particularly methamphetamine, is not lacking in the record. However, as Appellant correctly argues, the "contested issue at trial was whether [Appellant] had knowledge of or dominion and control over the drugs at [1624 Virginia]" and that he intended to distribute them. Arguing that the State's evidence connecting him to the large quantity of drugs in the bedroom and the intent to distribute them was tenuous, Appellant points to the presence of one other person—Overstreet—in the house at the time of Appellant's arrest, the fact that Appellant was not found in the bedroom, the lack of identification in the wallet, Altic's failure to turn in the ten packets of drugs found on Appellant's person to the officer in charge of collecting evidence at the scene, and the affirmative evidence offered by Appellant that he lived at another address at the time of the arrest.

This is a close case. However, given the clear and egregious circumvention of the hearsay rule in offering extrajudicial statements that went to the heart of the central disputed issue, and our holding in *Robinson*, a recent case with virtually identical facts and error, we are compelled to hold that Appellant was prejudiced, that this prejudice deprived Appellant of a fair trial, and that the case must therefore be reversed for a new trial.

■ Appellant raises two other points on appeal. We agree with the State that Appellant failed to preserve for appellate review the allegation of error made in his second point. In his second point, Appellant alleges the trial court abused its discretion in admitting eight of the nine letters found at 1624 Virginia claiming, as he did at trial, that the address on the outside of the letters constituted inadmissible hearsay and did not fall within any exception to that rule. He also claims the letters were not properly authenticated prior to their admission.

■ Appellant filed a motion in limine prior to trial seeking the exclusion from evidence of the nine letters seized from 1624 Virginia. Except as to one letter originating from the state public defender's office, that motion was overruled. It is well established that motions in limine are interlocutory in nature and, by themselves, preserve nothing for appellate review. *State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992). When Altic first testified concerning the letters he seized from 1624 Virginia, Appellant lodged no objection. Only when the State sought to admit the letters into evidence subsequent to Altic's testimony did Appellant state his objection, which he based on the hearsay rule.

The eastern district of this court faced a similar set of facts in *State v. Rayford*, 611 S.W.2d 377 (Mo.App. E.D.1981). In *Rayford*, the defendant lodged a pre-trial objection, by way of motion, to the admission of statements he made to police subsequent to an arrest the appellant argued was illegal. *Id.* at 378. That motion was denied. *Id.* The content of the appellant's statements to police was testified to by police officers at trial. *Id.* As in the instant case, no objection was made to the suspect testimony until the State moved to admit the documentary evidence supporting the testimony. *Id.* The court in *Rayford* declined to review the appellant's allegation of error, holding that the issue had not been preserved for appeal and that, since the appellant had not requested plain error review under Rule 29.12(b),[2] no such review was to be granted. *Id. See also State v. Howard*, 840 S.W.2d 250, 252 (Mo. App. E.D.1992).

■ Similarly, Appellant made no objection to Altic's testimony concerning the letters seized from 1624 Virginia. The only objection raised was to the admission into evidence of the letters themselves. Appellant does not acknowledge the possibility that this failure to object acts as a bar to appellate review, nor does he request plain error review. In any event, were we to grant plain error review and hold in favor of Appellant on this issue, our recourse would be to remand for a new trial, which, as we have already indicated, is required due to the errors discussed under point one. We cannot, therefore, grant plain error review since Appellant suffered no "manifest injustice" due to the error assigned under this point. Rule 29.12(b). We therefore decline to review the merits of Appellant's second point.

**2.** References to rules are to Missouri Rules of Criminal Procedure (2002) unless otherwise indicated.

In his third and final point, Appellant alleges the trial court plainly erred in failing to declare a mistrial *sua sponte* when the prosecutor made comments during closing argument that impermissibly drew the jury's attention to the fact that Appellant did not testify. In requesting plain error review under Rule 30.20,[3] Appellant acknowledges that no objection was made to the allegedly offending comments at trial. As with point two, we decline to grant plain error review, given that the case is remanded for new trial so that no "manifest injustice" has accrued to Appellant due to the alleged error. Rule 30.20. We are confident that the State is aware of the clear prohibition of any reference whatsoever to a defendant's exercise of his well-established right not to testify, and that the prosecutor will, on retrial of the case, meet his duty to ensure that Appellant receives a fair trial and assiduously avoid any such reference. *See State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000); *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524, 526 (1947); U.S. CONST. amend. V; MO. CONST. art. I, § 19; Section 546.270; Rule 27.05(a).

The judgment and sentences are reversed and the case is remanded for new trial pursuant to this opinion.

PREWITT, J., and BARNEY, P.J., concur.

---

3. Both Rule 29.12(b) and Rule 30.20 provide authority for appellate review for plain error.