**STATE of Missouri, Respondent,**

v.

**William P. CABLE, Appellant.**

**No. 27351.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 28, 2006.

Matthew Ward, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

William P. Cable ("Appellant") appeals his convictions for the Class C felony of Tampering in the first degree, a violation of section 569.080.1(2), and the Class C felony of Removal or Defacing Manufacturer's Numbers, a violation of section 301.400.[1] Following a jury trial, Appellant

---

1. "A person commits the crime of tampering in the first degree if ... [h]e knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile ... without the consent of the owner thereof." § 569.080.1(2).

Section 301.400 states that "[a]ny person who removes, covers, alters or defaces, or causes to be destroyed, removed, covered, altered or defaced, the manufacturer's number, the motor number or other distinguishing number on any motor vehicle ... the property of another, for any reason ..." is guilty under that section.

All statutory references are to RSMo 2000.

was sentenced by the trial court to six years in the Department of Corrections on each count with the sentences to run concurrently.[2] Appellant now brings four points on appeal. We affirm the judgment and sentence of the trial court.

"In testing the sufficiency of the evidence, review is limited to whether a submissible case was presented to the jury." *State v. Wheeler*, 802 S.W.2d 517, 518 (Mo. App.1989). In applying this standard, this Court views the evidence in the light most favorable to the jury's verdict. *State v. Smith*, 185 S.W.3d 747, 751 (Mo.App.2006). The record reveals that on June 26, 2004, Appellant and Chrystal Smith ("Ms. Smith") visited Heart of Missouri Auto Sales in Bolivar, Missouri. On that day, Ms. Smith and Appellant spoke with two different salesmen, one of which was William Nichols ("Mr.Nichols"), about purchasing a certain 1997 red Mitsubishi Eclipse ("Eclipse").[3]

On June 28, 2004, the general manager of Heart of Missouri Auto Sales, Janet Logan ("Ms.Logan"), discovered the 1997 red Mitsubishi Eclipse was missing from the car dealership's lot. Ms. Logan filed a police report for a stolen vehicle with the Polk County Sheriff's Department. After speaking with the salesmen at her dealership, Ms. Logan also provided police with a list of people, including Ms. Smith, who had recently looked at the red Eclipse. Additionally, Mr. Nichols contacted Ms. Smith and informed her that the car she had been interested in had been stolen from the car dealership. Ms. Smith gave Mr. Nichols Appellant's name because he had been with her at the dealership.

At trial, Appellant's friend, Steven Caston ("Mr.Caston"), testified that when he visited Appellant's home in Dallas County, Missouri, around July 4, 2004, Appellant showed him a red Mitsubishi Eclipse which he had under a tarp in a field behind his house. Mr. Caston testified that when Appellant removed the tarp from the vehicle he noticed the vehicle had no interior carpet; the interior was painted predominantly red; and there was a cool air intake attached to the engine. Appellant told Mr. Caston he purchased this vehicle from David Kay ("Mr.Kay").[4] Appellant also informed Mr. Caston that he had sanded the Vehicle Identification Number ("VIN") off of the motor of the vehicle with a sanding stone.

Jennifer Berry ("Ms.Berry") testified that she also saw Appellant with a red Eclipse around July 4, 2004. Ms. Berry testified that "[t]he Tuesday after the Fourth of July ..." Appellant called her and told her he had purchased her a car for $800.00. Ms. Berry stated that she met Appellant at a gas station and he drove up in the red Eclipse. Appellant told her "he need[ed] a title ..." for the vehicle and that they would go to a salvage yard to buy a salvaged vehicle in order to use the title off of that car as the title for the red Eclipse.

On July 6, 2004, Ms. Berry went with Appellant to a salvage yard where Appellant purchased the "shell" of a 1997 red Mitsubishi Eclipse. This salvage shell did not have doors, a motor, or a transmission and "was about ready to go to be crushed." Appellant paid $50.00 for the shell and received the title to it that day.

---

**2.** Appellant was also found to be a prior and persistent felony offender per section 558.016.

**3.** This particular red Eclipse had the following distinctive characteristics: a custom painted red dashboard; no carpeting in the interior; a scratch on the driver's side door;

a cold air intake on the engine; and custom pinstriping around the outside of the vehicle.

**4.** Mr. Kay testified at trial that he had previously owned a red Eclipse, however, he had not sold it to Appellant.

A few days later, Appellant recruited Mr. Caston and another man, Thomas Sawyer ("Mr.Sawyer"), to help him retrieve the shell from the salvage yard. When the three men met at Appellant's home before leaving to go to the salvage yard, Mr. Caston and Mr. Sawyer saw a red Eclipse parked at Appellant's house. Appellant told Mr. Caston that he wanted to remove the VIN plate from the shell he got at the salvage yard and put it on the other red Eclipse as well as possibly use some of the parts from the shell.[5]

After retrieving the shell from the salvage yard, the men took it to Jerry Allen's house where Appellant removed the VIN plate from the front dashboard and also removed the speakers. Thereafter, they took the salvaged shell to a scrap yard near Lebanon, Missouri, where Appellant sold it to the scrap yard for $31.50. The owner of the scrap yard testified that the shell he purchased for $31.50 did not have a VIN plate on it.

Mr. Catron testified that he again saw a red Eclipse in Appellant's possession after July 8, 2004. He stated that he met Appellant at a gas station and Appellant was driving the red Eclipse. Mr. Caston stated that Appellant let him drive the vehicle on that day and he noticed the red Eclipse did not have any carpeting and had a red painted interior.

Rachel Williams ("Ms.Williams"), whose brother is acquainted with Appellant, testified that she saw Appellant in possession of a red Eclipse on two different occasions. She stated that in early July of 2004 she saw a red Eclipse sitting outside her home when Appellant was visiting her brother. She again saw Appellant with a red Eclipse in the middle of July when Appellant came to her house to pick up her

brother. Ms. Williams then contacted the police and advised them Appellant was in possession of a stolen vehicle.

On July 15, 2004, Dallas County Sheriff's Deputy Kyle Hendricks ("Deputy Hendricks") requested the assistance of Deputy Travis Britain ("Deputy Britain") in looking for Appellant. At approximately 2:30 a.m., the deputies located a red Eclipse sitting outside of Appellant's residence. The deputies examined the vehicle and noticed that it did not have the same VIN as the vehicle reported stolen, but that it otherwise matched the description of the stolen vehicle. They knocked on Appellant's front door and received no response. The deputies seasonably obtained a search warrant with the help of Deputy Scott Rice ("Deputy Rice"). Inside Appellant's residence the deputies found the key to the red Eclipse as well as some speakers. Deputy Rice testified that the VIN plate on the red Eclipse parked in front of Appellant's house "appeared to have been tampered with," in that "[i]t appeared to have some scratch marks on it, like a—like a screwdriver or something had went over the top of it, and it was bowed a little bit, and the pop rivets [on each end] were kind of loose." Deputy Rice also testified that it appeared that the identifying numbers had been "ground off" the engine block of the vehicle and that an identification sticker had been removed from the inside of the driver's door, because "[y]ou could see where there had used to be a sticker there that was gone." Deputy Rice also observed this vehicle had a painted red interior; no interior carpeting; and a "special or a different type of shifter ... knob." In the glove compartment of the vehicle, the deputies discovered the title and bill of sale from the shell vehicle purchased by

---

**5.** Mr. Sawyer also testified that Appellant had informed him he had purchased the salvaged vehicle because the title to the red Eclipse had been lost. Additionally, Ms. Berry testified that Appellant told her he had "switched" the VIN plates of the red Eclipse and the salvaged shell.

Appellant at the salvage yard on July 6, 2004. The VIN listed on the title to the salvaged vehicle found in the glove compartment matched the VIN plate on the red Eclipse impounded by law enforcement authorities.

Ms. Logan and Mr. Nichols from Heart of Missouri Auto Sales examined the red Eclipse after it was impounded by police. They both felt it was the vehicle stolen from their car dealership. Ms. Williams also viewed the vehicle at the impound lot and felt it was the same vehicle that she had seen Appellant driving on two prior occasions in July of 2004. At trial Ms. Berry and Mr. Caston both identified pictures of the red Eclipse as being the same vehicle they saw Appellant driving in July of 2004.

Appellant did not testify at trial; however, his father and his aunt testified that Appellant often rebuilt salvaged cars and they believed he had rebuilt the red Eclipse in question.

Following the close of all the evidence, Appellant was convicted of the crimes outlined above and sentenced to two, concurrent six-year terms in the Missouri Department of Corrections. This appeal followed.

■ In his first point on appeal Appellant maintains the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because "the evidence was insufficient to establish that the offense occurred in Dallas County."

■ Venue must be proven even though it is not an integral part of the offense; however, venue need not be proven beyond a reasonable doubt and it may be inferred from all the evidence. *State v. Lingar,* 726 S.W.2d 728, 732 (Mo. banc 1987). The standard by which venue must be established is whether it could reasonably be inferred by the facts and circumstances that the charged crime occurred within the trial court's jurisdiction. *Id.*

■ "However, 'even if the evidence is inadequate to allow venue to be inferred, venue is a personal prerogative which is waived by proceeding to trial without objection.'" *State v. Thompson,* 147 S.W.3d 150, 157 (Mo.App.2004) (quoting *State v. Mack,* 903 S.W.2d 623, 627 (Mo.App.1995)) (superceded on other grounds by *State v. Anders,* 975 S.W.2d 462, 465 (Mo.App. 1998)). "An objection to venue made for the first time at the close of the State's case or at the close of all the evidence comes too late." *Id.*

Here, Appellant filed a written motion for a judgment of acquittal at the close of the State's case and a written motion for judgment of acquittal at the close of all the evidence. Neither written motion challenged venue. Defense counsel did, however, mention venue in his oral remarks to the trial court in arguing his motion for judgment of acquittal at the close of the State's evidence. Appellant also alleged in his motion for new trial that the State failed to prove venue. However, "[i]f Appellant was truly concerned about whether venue was proper, he had ample opportunity to raise the issue prior to trial." *Thompson,* 147 S.W.3d at 158. By his failure to object on the basis of lack of proof by the State of proper venue, Appellant waived his complaint that venue was improper by proceeding to trial in the instant matter. *See id.* Point One is denied.

■ Appellant's second point relied on maintains the trial court abused its discretion in overruling defense counsel's objection to the testimony of Ms. Logan. Specifically, he maintains Ms. Logan's testimony that one of her employees "told her that the keys were not in the car at the close of business on June 26, 2004

... ." was hearsay and should have been excluded.

■ Hearsay is any out-of-court statement offered to prove the truth of the mattered asserted. *State v. Sutherland,* 939 S.W.2d 373, 376 (Mo. banc 1997). Courts generally exclude hearsay statements because of the inherent lack of trustworthiness accompanying such testimony. *State v. Link,* 25 S.W.3d 136, 145 (Mo. banc 2000).

■ Review here is for abuse of discretion. *State v. Zink,* 181 S.W.3d 66, 72–73 (Mo. banc 2005). A trial court abuses its discretion only "when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* at 73. Furthermore, review on direct appeal is for prejudice, not mere error, and this Court will not reverse unless the error was so prejudicial that it deprived Appellant of a fair trial. *Id.* "Trial court error is not prejudicial unless there is reasonable probability that the trial court's error affected the outcome of the trial." *Id.*

Here, while the trial court should have sustained the objection of defense counsel on the basis of hearsay, we fail to see that a reasonable probability existed that the jury's verdict would have been different but for her previously set out testimony. *See State v. Garrett,* 139 S.W.3d 577, 582 (Mo.App.2004). In other words, it is our view that Ms. Logan's testimony did not so influence the jury that, "when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for ..." Ms. Logan's testimony. *Id.* at 583.

■ First, Ms. Logan's testimony does not inexorably link Appellant with the keys to the vehicle in question. Second, her testimony about the keys to the Mitsubishi

Eclipse was cumulative, because the jury heard that the keys to the vehicle were later recovered by deputies at Appellant's own home. "Any error in receiving evidence is not considered prejudicial where similar evidence has been received elsewhere in the case without objection." *State v. Roller,* 31 S.W.3d 152, 157 (Mo. App.2000). Accordingly, the disputed testimony was not reasonably likely to have changed the jury's verdict and was not prejudicial. *Garrett,* 139 S.W.3d at 582. Point Two is denied.

■ In his third point of trial court error, Appellant asserts the trial court plainly erred by "allowing the State to comment during Opening Statement that [Ms.] Smith, upon being notified that the car that she had planned on purchasing was missing, 'decided to do some checking herself,' discovered that the car was in the possession of [Appellant], and then contacted the Dallas County Sheriff's Department. ..." Appellant maintains this statement violated his due process rights "in that the State did not call [Ms.] Smith as a witness at trial, and the State either did not intend, or knew it could not, produce [Ms.] Smith to testify upon making the opening statement."

■ Appellant concedes that he did not properly preserve this point for appellate review in that he failed to include the allegation in his motion for new trial. *See* Rule 29.11(d).[6] Therefore, he requests plain error review under Rule 30.20. Claims of plain error are reviewed "under a two-prong standard." *State v. Roper,* 136 S.W.3d 891, 900 (Mo.App.2004). "In the first prong, we determine whether there is, indeed, plain error, which is error that is 'evident, obvious, and clear.'" *Id.* (quoting *State v. Scurlock,* 998 S.W.2d 578, 586 (Mo.App.1999)). "If so, then we look

---

**6.** All Rule references are to Missouri Court Rules (2006).

to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id.*

■■■ Trial courts have broad discretion over the scope and extent of opening statements. *State v. Gilbert,* 103 S.W.3d 743, 751 (Mo. banc 2003). In opening statement, the State " 'may refer to evidence that [it] intends to introduce ...' " even if that evidence is not actually presented at trial. *State v. Clay,* 975 S.W.2d 121, 136 (Mo. banc 1998) (quoting *State v. Copeland,* 928 S.W.2d 828, 841 (Mo. banc 1996)). Such references "to arguably admissible evidence made in good faith with reasonable expectation that the evidence will be produced is not cause for reversal...." *Copeland,* 928 S.W.2d at 841. "The mere neglect to set forth some fact mentioned in opening [statement] is not prejudicial unless the [State] never intended to present the evidence or actually knew [it] could not support the declaration of proof." *State v. Gilmore,* 681 S.W.2d 934, 944 (Mo. banc 1984).

The record reveals Ms. Smith was endorsed by the State as a potential witness and her name appears on the State's list of witnesses filed with the trial court; however, Ms. Smith never testified at trial.

Missouri courts start with a presumption that the prosecuting attorney's statements are made in good faith. *State v. Caffey,* 457 S.W.2d 657, 665 (Mo.1970) (holding there was no evidence of bad faith on the part of the State in referencing the possible testimony of a certain witness in opening statement and then failing to call the witness at trial where the witness "was endorsed on the information as a witness for the State"). Here, there is little probative evidence in the record to suggest the State recited Ms. Smith's possible testimony in its opening statement with the express intention never to have her testify at trial. *Id.*

■■ Furthermore, during the course of trial Appellant never made allegations of prosecutorial "bad faith" based on the State's purported failure to present the testimony of Ms. Smith. Where the trial court is given no opportunity to instruct the jury or correct an alleged error until the time of appeal, such an assignment of error is not looked upon with favor. *See State v. Sykes,* 372 S.W.2d 24, 27 (Mo. 1963). We find no probative evidence showing that the State's recitation in opening statement of Ms. Smith's possible testimony "had a decisive effect on the jury's determination." *Gilmore,* 681 S.W.2d at 944. We fail to see where Appellant's evidence in support of his third point is "evident, obvious and clear." *Roper,* 136 S.W.3d at 900. Accordingly, Appellant has failed to meet the first prong of the plain error test. Plain error review is not warranted. *Id.* Appellant's third point on appeal in denied.

■■ Lastly, in his fourth point relied on Appellant asserts the trial court plainly erred in allowing Mr. Nichols, the car salesman at Heart of Missouri Auto Sales, "to testify as to what [Ms.] Smith told him concerning the identity of the person [Ms. Smith] was arguing with at the car lot ...," in that such testimony was hearsay and violated Appellant's right to confront witnesses against him.

In the present matter, during the State's direct examination, Mr. Nichols gave the following testimony:

The State: Okay. Now. What did you do when you learned that the vehicle was missing?

Mr. Nichols: I gave all my information to my bosses that—the people that I knew that was around the car at the time....

The State: And did those people include [Ms.] Smith?

Mr. Nichols: Yes, ma'am. She was the person I was actually trying to sell the vehicle to.

The State: Okay. And was one of the other names that you gave to your supervisors that of [Appellant]?

Mr. Nichols: Yes, ma'am. And the reason I got his name because I wasn't familiar of [sic] his name. I got his name from his ex-girlfriend, which was [Ms.] Smith. [Ms.] Smith and him were in the process of a[n] argument over the car. It was—

The State: Did you witness—

Mr. Nichols: I wasn't—

The State:—an argument between the two of them about the car?

Mr. Nichols: I wasn't for sure if it was about the car, but I was on the other side of the lot going towards them, and they were in a[n] argument and he was up there with another gentleman.

The State: And had he—had you personally talked to [Appellant] about purchasing the car?

Mr. Nichols: No. It was another salesman at the time.

Defense counsel did not object to this testimony.

■ "In order to properly preserve an evidentiary issue for appellate review, an objection must be made upon introduction of the evidence; that objection must be reasserted as error in a motion for new trial; and the issue must be briefed on appeal." *State v. Robinson,* 194 S.W.3d 379, 380 (Mo.App.2006). In the present matter, Appellant neither objected to the testimony at the time it was presented nor included this allegation of error in his motion for new trial. Again, conceding he failed to preserve this issue for appeal, Appellant requests plain error review of this allegation of error under Rule 30.20.

■ " 'The plain error rule should be used sparingly and [it] does not justify a review of every alleged trial error that has not been properly preserved for appellate review.' " *State v. Carr,* 50 S.W.3d 848, 853 (Mo.App.2001) (citation omitted). "Relief under the rule will only be granted if a[n] [Appellant] can show the action of the trial court was not only erroneous, but also the error so substantially impacted his rights that manifest injustice or miscarriage of justice will inexorably result if the error is left uncorrected." *State v. Kohser,* 46 S.W.3d 108, 111 (Mo.App.2001). "Plain errors are those which are evident, obvious, and clear." *Id.*

■ Here, the evidence that Appellant complains of was not prejudicial to Appellant because it was collateral to the State's case, in that it was not an essential component of the proof the State was required to make to prove the crime of tampering in the first degree. Mr. Nichols's statements did not result in a manifest injustice or miscarriage of justice. There was substantial, properly admitted corroborating evidence linking Appellant to the crimes with which he was charged and convicted, other than Mr. Nichols's testimony. Appellant was found in possession of the red Eclipse; he had control of the key to the vehicle; he had been seen driving the vehicle after it was reported missing; and the VIN number had been altered by Appellant. "Where substantial corroborating evidence is properly admitted at trial, a trial court's admission of hearsay does not amount to plain error." *State v. Norman,* 178 S.W.3d 556, 561 (Mo.App.2005). Given the strength of the foregoing evidence, we cannot conclude that Appellant was prejudiced by Mr. Nichols's testimony nor does the record support the proposition that he suffered a manifest injustice by this particular testimony. Additionally, it has long been held that " 'where a timely objection is not made to the introduction of hearsay state-

ments, their admission is not plain error.'" *Norman*, 178 S.W.3d at 561 (quoting *State v. Aikens*, 3 S.W.3d 792, 796 (Mo.App. 1999)); *see also State v. Smith*, 989 S.W.2d 223, 226 (Mo.App.1999). "'The admission of unobjected-to hearsay almost never rises to the level of plain error.'" *Id.* (quoting *State v. Cruz*, 971 S.W.2d 901, 904 (Mo. App.1998)). We decline plain error review. *See Roper*, 136 S.W.3d at 900. Point denied.

The judgment and sentence of the trial court is affirmed.

GARRISON, J. and BATES, C.J., concur.