

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD33632 |
| | ) | |
| MICKEY R. COPELAND, | ) | FILED: November 3, 2015 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF WAYNE COUNTY

Honorable Sidney T. Pearson, III, Judge

**<u>AFFIRMED</u>**

Mickey Copeland appeals a conviction for manufacturing methamphetamine. He does not dispute the sufficiency of evidence which we describe only as needed to explain why we deny two claims of trial error and affirm the conviction.

### Background

Investigators suspected Steven Taylor of operating a motel meth lab. Tipped that Taylor might be with Copeland at 207 Maple Street in Arcadia, officers went there and found Taylor and evidence of another meth lab (Taylor later went to prison).

INPLEX research that evening revealed suspicious pseudoephedrine purchases by Copeland and his girlfriend, who had not been at 207 Maple Street when officers arrived but were said to reside there.[1]  Charged with manufacturing meth, Copeland did not testify or call any witnesses at trial. Jurors found him guilty in 29 minutes.

## Claims on Appeal/Standard of Review

Copeland claims the trial court abused its discretion in (1) denying a mistrial, and (2) admitting hearsay testimony. Judicial discretion is abused when the court's ruling is so illogical, unreasonable, and arbitrary that it "shocks the sense of justice and indicates a lack of careful deliberate consideration." *State v. Smith*, 996 S.W.2d 518, 523 (Mo.App. 1999).

## Mistrial Request

The trial court had directed that Copeland not be in visible restraints in the courtroom or any time he could be seen by prospective jurors. Before voir dire, however, defense counsel reported that Copeland had been brought to the courthouse in handcuffs and thought prospective jurors might have seen him that way.

The court promptly inquired of Copeland, the attorneys, the bailiffs, and the circuit clerk. Both Copeland and the transporting bailiff said they bypassed the courthouse lobby and instead used the elevator. This brought them to a hallway outside the courtroom where Copeland's cuffs were removed. The court credited the

---

[1] Per trial testimony, INPLEX "is a Natural Precursor Log Exchange system, [which] logs all pseudoephedrine purchases made in the continental United States.... Mr. Copeland and Ms. Hodges had been purchasing pseudoephedrine over the last month or so" near St. Louis, some 100 miles away.

account of the transporting bailiff who recalled some two or three persons in the hall but doubted they saw the handcuffs because "[w]e were walking too fast."

The defense moved for a mistrial, which the court denied, citing its familiarity with the courthouse layout and how Copeland was brought up; only a short walk was involved and just two or three persons were in that area; and "[t]here would be, on the path he took, very little chance of anyone observing that he was restrained."

We reject Copeland's charge of error in this ruling. Preliminarily, Copeland's burden was to show "that any juror actually saw him restrained during his transport." ***State v. Snowden***, 285 S.W.3d 810, 815 (Mo.App. 2009). Even then, "brief, inadvertent exposure to the jury of a handcuffed defendant does not deprive the defendant of a fair trial and cannot be said to result in prejudice." ***Smith***, 996 S.W.2d at 523.[2] "This is so because it is a normal and regular, as well as a highly desirable and necessary, practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this." ***Id***.

This record does not establish that jurors actually saw handcuffs, or prejudice even if a couple of unidentified persons briefly saw Copeland being transported with restraints. To deny a mistrial was not illogical, unreasonable, arbitrary, ill-considered, or shocking to the sense of justice. Mistrial "is a drastic remedy, to be utilized only when there is grievous error which cannot be remedied otherwise." ***Id***. The trial court was better positioned to weigh claims of prejudice; whether to grant a mistrial was within its sound discretion. ***Id***.  Point denied.

---

[2] *Accord* ***State v. Sanders***, 903 S.W.2d 234, 239 (Mo.App. 1995); ***State v. McMillian***, 779 S.W.2d 670, 672 (Mo.App. 1989); ***State v. Bonnarens***, 724 S.W.2d 287, 289 (Mo.App. 1987); ***State v. Edwards***, 714 S.W.2d 786, 788-89 (Mo.App. 1986); ***State v. Crawford***, 539 S.W.2d 633, 635-36 (Mo.App. 1976).

## Hearsay

We see two problems with Copeland's complaint that the trial court "allow[ed] Officer Thompson to testify that a 'subject' told him that Mr. Copeland 'manufactured dope...or meth' at a particular address ...."

- First, the complaint must be less about the initial hearsay ruling than part of an answer to which the defense did not object, move to strike, or otherwise voice any complaint.

- Second (and perhaps why the defense never reacted), the meth-making reference seems as or more likely to refer to Steven Taylor, then the investigation's subject and target, rather than Copeland.

Having quoted all relevant trial transcript below,[3] we can be brief in addressing each of these.

---

[3] We begin as Officer Thompson explains how he got involved in the search for Steven Taylor and end with his now-complained-of testimony, italicized as in Copeland's brief:

A. I received a phone call from some other officers that had been working a methamphetamine lab case earlier, wishing to go look for another subject. I think it was Steven Taylor. Went down there, made contact with them. Through their investigation they received information that Mr. Taylor could be with Mr. Copeland at a residence. We later found out the address. They did have [*sic*] the actual numeric address but we was able to obtain that later. I made a contact with another subject that I know down there that works with me. He advised –

MR. CHASE: I would object to narrative.

THE COURT: Sustained. Once you've answered the question, please stop and let him ask another, okay?

A. Yes, sir.

Q. What other information did you receive?

A. That Mr. –

MR. CHASE: Judge, at this time may we approach?

THE COURT: You may.

(The following proceedings were held at the bench.)

MR. CHASE: I'm not sure where this is going, but I think it may be un-confronted hearsay to the effect of something went on with Mickey Copeland. So at this time I would object because of hearsay.

THE COURT: I think you're premature. He hasn't asked him for any hearsay yet. He certainly may. If he does you need to object then.

4

First, it was not illogical, unreasonable, arbitrary, ill-considered, or shocking to overrule the hearsay objection after the state said testimony would be "not for the truth of the matter asserted, but to show what the officers did next." Out-of-court statements generally are admissible to explain subsequent police conduct and supply background or continuity. ***State v. Garrett***, 139 S.W.3d 577, 581 (Mo.App. 2004). Copeland's real complaint is with the witness's answer, specifically the meth-making reference which, *if* it referred to Copeland, arguably was harmful to his case.

Copeland argues ***Garrett*** as a parallel; we reversed there because police actions could have been explained without specific reference to Garrett's drug dealing. ***Id***. at 582, 584. Yet ***Garrett*** differed in key respects – the drug-dealing references were clearly to Garrett; the state repeatedly emphasized them in opening statement, witness testimony, and closing argument despite numerous defense

---

MR. CHASE: Well, Judge, I think the primary thing here is that the narrative was going that way, so I objected to hearsay. So I would ask the Court for –

THE COURT: The objection is overruled at this point. You can certainly renew it if necessary.

(The following proceedings were held in open court.)

THE COURT: Do you recall the question in front of you or do you want him to re-ask it?

A. I'm fine, sir. Made contact with the subject. He said he'd also heard information through his source –

MR. CHASE: Objection, hearsay.

THE COURT: What's the purpose?

MR. PARKER: Simply not for the truth of the matter asserted, but to show what the officers did next.

MR. CHASE: Same argument as before, Judge.

THE COURT: Overruled. You may answer.

A. He had inferred that he knew where Mr. Copeland resided at, Mr. Taylor had been there before, we might check there. *Through my conversation with him he said yeah, he had heard in the past that he manufactured dope there, or meth there, but he couldn't say a hundred percent, he just had heard that.* [Emphasis added.]

No objection, renewed objection, motion to strike, mistrial request, or other complaint or comment by the defense followed immediately or later.

5

objections; and the state argued them for their truth. *Id*. at 579, 580-81, 582. None of those fit this case.

This case is more like ***State v. Fakes***, 51 S.W.3d 24 (Mo.App. 2001), where a properly-admitted out-of-court statement included information harmful to Fakes. Without a motion to strike the earlier remark or request for a curative instruction, any objection was waived. *Id*. at 28-29. So also the general rule: if a question to a witness is not itself improper, but the answer includes inadmissible matter, there must be an objection or motion to strike the answer or any objection is waived. *See* 75 Am. Jur. 2d Trial §§ 326, 380; Charles T. McCormick, *The Procedure of Admitting and Excluding Evidence*, 31 Tex. L. Rev. 128, 133 (1952).[4] That did not happen here.

This non-reaction may be explained by the second weakness in Copeland's complaint – a likelihood that Steven Taylor, not Copeland, was the "he" being referred to. Recall that Taylor, not Copeland, then was the focus of the investigation. Officer Thompson was describing the investigation of and search for Taylor when he made the comment in question. Counsel's failure to react to this fleeting reference may be because, in context, "he" was understood to mean Taylor, not Copeland.[5]

To reiterate, the trial court did not abuse its discretion in overruling the initial hearsay objection. Further, it is speculation whether the subsequent drug reference referred to Copeland. Finally, there was no timely objection, motion to strike, or

---

[4] These and all other citations herein were accessed electronically via Westlaw or LEXIS.
[5] Also notably, in this context, the statement was that "he," not "they," made meth.

other request for curative relief regarding Officer Thompson's answer. Point denied.

Judgment affirmed.

DANIEL E. SCOTT, P.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, C.J. – CONCURS