**STATE of Missouri, Plaintiff–Respondent,**

v.

**Kim David MORGAN, Defendant–Appellant.**

No. SD 29373.

Missouri Court of Appeals, Southern District, Division Two.

July 28, 2009.

Nancy A. McKerrow, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and John M. Reeves, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON BURRELL, Presiding Judge.

Kim D. Morgan ("Defendant") was convicted, following a jury trial, of the class B felony of possession of a controlled substance with intent to distribute and sentenced to twelve years' imprisonment. *See* Section 195.211.[1] In his sole point on appeal, Defendant contends the trial court abused its discretion when it permitted a confidential informant (the "CI") to testify about another suspect's out-of-court statements because that testimony constituted inadmissible hearsay and violated his rights under the Confrontation Clause.[2] Finding no merit in Defendant's claim, we affirm the conviction.

---

**1.** Unless otherwise indicated, all references to statutes are to RSMo 2000.

**2.** A defendant's right to confront the witnesses against him is guaranteed by both the

## I.  Facts and Procedural Background

Defendant does not challenge the sufficiency of the evidence to support his conviction.  Viewed in the light most favorable to the State, *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001), the relevant facts are as follows.  The CI was paid to work with a drug task force.  In the course of this work, the CI asked a suspect ("Suspect") where he could buy some marijuana.  Suspect told the CI to contact Defendant, who Suspect said would be at a yard sale in Kennett.  Suspect also told the CI where Defendant lived.

The next day, the CI met Defendant at the yard sale and asked him if he knew where the CI could get a quarter-pound of marijuana.  Defendant responded in the affirmative.  Defendant told the CI that the marijuana would cost between $250 and $300 and to meet him at Ron McAbee's ("McAbee") house—where Suspect had said Defendant was living.  After this conversation, the CI informed the drug task force that Defendant would be selling him marijuana.  The CI then met with agents of the task force.  After first searching the CI and his car, these agents wired the CI with a recording device and gave him $300 to use to purchase the marijuana.  The CI then went to McAbee's house and the police set up surveillance around it.

Inside the house, the CI was joined by Defendant, Junior Wright ("Wright"), Wright's wife, and McAbee.  Wright told the CI that it would cost $250 to get a quarter-pound of marijuana and that they would have to go to Arkansas to get it.  The CI told Wright and Defendant that he

Missouri Constitution and the Sixth Amendment of the United States Constitution, and to the same extent.

"had $300 and that if they could get [him] a quarter pound for $250 that they could have the other $50 for gas." Defendant then told the CI that they could not use any of the money on gas or he would not be able to get the drugs.

The CI handed Wright the $300 and asked if he could go with them to get the marijuana, but Defendant said they could not take him along. Because Wright had indicated that his car did not have enough gas for the trip, the CI offered to let Wright and Defendant use his car. Wright and Defendant accepted the CI's offer and drove off in his car with drug task force agents tailing them. After Wright and Defendant left, the CI called the drug task force and informed them that he had given Wright and Defendant the $300.

Agents from the drug task force followed the CI's car into Arkansas, but lost it in Jonesboro. Once in Jonesboro, Wright drove to an apartment that Defendant directed him to. Defendant and Wright went into the apartment, and Defendant gave an unidentified individual $300 for marijuana. After making the purchase, Wright and Defendant drove back toward Kennett.

In the meantime, because the tailing agents had lost sight of the CI's car, the drug task force alerted other area law enforcement officers to be on the lookout for the vehicle. Upon reaching Kennett, Wright and Defendant were pulled over by a patrol officer for the Kennett police department. While they were being pulled over, Defendant tried to get Wright to "run so he could throw [the marijuana] out," but Wright refused. The patrolman also noticed that the front passenger (later identified as Defendant) "kind of bent down towards the floorboard of the vehicle" as the car was pulling over.

After stopping the vehicle, the patrolman approached the driver (later identified as Wright) and had him exit the vehicle and take a seat in his patrol car. Once inside the patrol car, the patrolman advised Wright that he had stopped him based on information he had received from the drug task force and asked if he could search the vehicle. Wright assented, and the patrolman went to the passenger side of the CI's vehicle where Defendant was sitting. As the patrolman was getting Defendant out of the car, he smelled a strong odor of marijuana and "noticed in the floorboard sticking half underneath the seat and into the floorboard ... a plastic bag with a green leafy substance in it." The patrolman retrieved that bag along with two others he located under the front passenger seat. All three bags contained what was later identified as marijuana.

After the jury rendered its guilty verdict, Defendant filed a motion seeking a judgment of acquittal notwithstanding the verdict, or, in the alternative, a new trial. The motion alleged, *inter alia*, that the trial court erred in overruling both his motion *in limine* and subsequent hearsay objections at trial to the CI's testimony about Suspect's statements about Defendant. This appeal followed the trial court's denial of Defendant's motion.

## II. Standard of Review

A trial court has broad discretion to admit or exclude evidence at trial. This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion. [T]hat discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. Additionally, on direct appeal, this Court reviews the trial court for prejudice, not

mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial.

*State v. Forrest,* 183 S.W.3d 218, 223–24 (Mo. banc 2006) (internal citations and quotation attributions omitted). "However, whether a criminal defendant's rights were violated under the Confrontation Clause by the admission of evidence is a question of law that an appellate court reviews de novo." *State v. Nabors,* 267 S.W.3d 789, 793 (Mo.App. E.D.2008) (citing *State v. March,* 216 S.W.3d 663, 664–65 (Mo. banc 2007)).

### III.  Discussion

■■■ The first issue to be determined is whether the challenged testimony was, in fact, hearsay. "A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." *Forrest,* 183 S.W.3d at 224. "Because the person who provides the information about that which another testifies is not under oath and is not subject to cross-examination, hearsay evidence is objectionable." *State v. Robinson,* 111 S.W.3d 510, 513 (Mo.App. S.D.2003). "Testimony of what another said offered in explanation of conduct rather than as proof of the facts in the other's statement is not inadmissible hearsay." *State v. Murray,* 744 S.W.2d 762, 773 (Mo. banc 1988) (citing *State v. Brooks,* 618 S.W.2d 22, 25 (Mo. banc 1981)). "It is well established that such testimony is admissible to explain the officers' conduct, supplying relevant back-

ground and continuity to the action." *Brooks,* 618 S.W.2d at 25.

The rationale for this exception is that by admitting hearsay[3] statements for this limited purpose "the triers of fact can be provided a portrayal of the events in question, more likely to serve the ends of justice in that the jury is not called upon to speculate on the cause or reasons for the officers' subsequent activities."

*State v. Garrett,* 139 S.W.3d 577, 581 (Mo. App. S.D.2004) (quoting *Brooks,* 618 S.W.2d at 25).

Prior to trial, Defendant filed a motion *in limine.* During a pre-trial conference, the court took up and denied Defendant's *in limine* motion but, with the agreement of the prosecutor, allowed Defendant a continuing trial objection to the testimony described in the motion on hearsay and Confrontation Clause grounds. The case proceeded to trial, and during the State's opening statement, the prosecutor said:

> Now, in the middle of October of last year, [the CI] had been talking to another suspect and was referred by her to the Defendant … over there as somebody he could get marijuana from. And he went and met [Defendant] at a yard sale and they discussed and set up a deal for a day or two later.

Defendant made no objection to this statement. At trial, the State called the CI and the following pertinent colloquy took place:

> Q.  Now, sometime in the middle of October, had you had a conversation with a [suspect]—a woman?
>
> A.  [Suspect]? Yes.

---

3. Continuing to refer to these types of statements as "hearsay" is somewhat awkward as their use for something other than to prove the truth of the matter asserted removes them from the very definition of hearsay. Perhaps referring to them as "what would otherwise be hearsay" or "second-hand" would be better.

Q. And did you ask her anything about where you might buy some marijuana?

[Defense Counsel]: Objection, Your Honor. I'd have to object to hearsay.

[THE COURT]: Yes. The objection is overruled and may be continuing.

[Defense Counsel]: Judge, Your Honor, I would like to make this a continuing objection.

[Prosecutor]: No problem. No objection to that.

Q. And did [Suspect] tell you who you should contact?

A. Yes, sir.

Q. And who was that?

A. [Defendant].

Q. Okay. And did you meet up with [Defendant] where she told you to?

A. Yes, sir.

Q. And where was that?

A. It was at a yard sale in Kennett.

Following this exchange, the CI also said: "I went to the house where [Suspect] told me where [Defendant] and them— where I could buy the marijuana at."

Finally, Defendant complains about the following portions of the prosecutor's closing argument: "I submit to you if [Defendant] didn't set this up, how, how did [the CI] know to go over there that afternoon?" Twice more in closing, the prosecutor referred to the fact that Defendant "set it up" and "set this up."

▪ Defendant contends that although the prosecutor argued at trial that he was not offering the suspect's statements (via the CI's testimony) for the truth of their content, "this assertion [was] belied by the prosecutor's closing argument when he reminded the jurors three times that it was [Defendant] that 'set this thing up.'" We disagree.

The CI simply testified that the reason he approached Defendant (as opposed to someone else) was because Suspect had told him that Defendant could sell him marijuana and knew where Defendant could be found. This testimony was used to show why the CI went to the yard sale and approached Defendant and why he later went to McAbee's house.

This testimony was not offered to prove that Defendant did, in fact, sell marijuana, was at a particular yard sale, or was living in a certain location. *See State v. Howard,* 913 S.W.2d 68, 70 (Mo.App. E.D.1995) (finding that the testimony was not inadmissible hearsay when an undercover agent testified that a confidential informant told him the defendant was selling cocaine and where the defendant would be selling it); *Brooks,* 618 S.W.2d at 24–25 (finding no abuse of discretion in permitting the prosecutor to remark during opening statement that, "[the police] work through informants ... they received information that narcotics were being sold—heroin was being sold at 2918 Sheridan by [the defendant]" because "evidence as to the informant's observations was 'arguably admissible', as the officer's testimony was offered not to prove that the information received was true but rather to explain his surveillance of the house."); *Robinson,* 111 S.W.3d at 514–15:

To explain the subsequent conduct of law enforcement, it was adequate for the officer to testify that the reason they went to the address was because of information received from the informant that marijuana and crack cocaine were present there. However, to allow the officer to testify that Appellant was "keeping" marijuana and crack cocaine at the residence went beyond the scope necessary to show subsequent conduct of law enforcement and was prejudicial.

■ The CI's testimony regarding what Suspect told him was not of prime importance in the case and was only used to show that the reason the CI went to Defendant at all was because of that information. It was also logically relevant to show why the CI then contacted the drug task force and was wired before continuing his investigation. Further, Defendant's contention that the prosecutor's closing argument that Defendant had "set this up" revealed that the complained-of testimony was offered for the truth of the matter is misplaced. The prosecutor's argument more likely referred to the CI's first-hand testimony that he met with Defendant and Defendant told him that he could sell him marijuana. The trial court did not abuse its discretion in overruling Defendant's objections.

In any event, Defendant would not have prevailed on his appeal even if the referenced testimony had constituted inadmissible hearsay because the evidence was harmless beyond a reasonable doubt.

Error in admitting evidence is not prejudicial requiring reversal unless it is outcome-determinative. A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced a jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence. Constitutional errors do not necessarily require reversal if we determine that the error was harmless beyond a reasonable doubt. To find an error harmless beyond a reasonable doubt, we must find that no reasonable doubt exists that the admitted evidence failed to contribute to the jury's verdict.

*Nabors,* 267 S.W.3d at 795 (internal citations and quotations omitted).

Defendant argues that he "was prejudiced because [Suspect's] statement implied that [Defendant] was a known marijuana dealer when all of the other evidence at trial indicated that [Defendant] was simply going along with Orville Wright in selling marijuana to [the CI]." To the contrary, a review of the record shows overwhelming evidence of Defendant's guilt and "the inevitable conclusion that the jury would have reached the same verdict even if the out-of-court statement[ ] had not been admitted into evidence." *Id.* at 796.

Excluding the CI's testimony that Suspect told him Defendant sold marijuana, the remaining evidence showed that the CI met Defendant at a yard sale; that Defendant told him he could sell him marijuana and to meet him at McAbee's house; that the CI met Defendant at the house wearing a wire; that the CI gave $300 to Wright to buy marijuana; that Defendant told the CI he could not ride along to purchase the marijuana; that Wright and Defendant drove the CI's car to Arkansas to purchase marijuana; that in Arkansas Defendant purchased marijuana; that upon re-entering Missouri Defendant wanted to "run" when the patrolman began to pull them over; and that Defendant attempted to conceal the marijuana that was found underneath the seat he was sitting on. A review of the record leaves us with no reasonable doubt that the CI's testimony about the information he received from Suspect was not outcome-determinative. The point is denied, and the conviction is affirmed.

PARRISH and RAHMEYER, JJ., Concur.