**Benjamin Charles HARDY, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. SD 31832.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 11, 2012.

Mark Allen Grothoff, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., Mary H. Moore, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., J.

Benjamin Charles Hardy ("Hardy") appeals the motion court's denial of his post-conviction relief motion filed pursuant to Rule 29.15.[1] In his two points relied on, Hardy challenges trial counsel's failure to object to certain testimony, as well as trial counsel's failure to object to a statement made by the State during closing argument. We affirm the motion court's decision.

## Factual and Procedural Background

Given the narrow scope of Hardy's appeal, we set forth only those facts necessary to complete our review. The record reveals Hardy was charged with one count of the class A felony of murder in the first degree, a violation of section 565.020, and one count of the unclassified felony of armed criminal action, a violation of section 571.015.[2] The evidence adduced at trial revealed that on the evening of July 1, 2005, Brandy Medlock ("Medlock") answered a knock at her door to find Hardy, a man she did not know, wearing dark clothing and carrying a shotgun. He asked for "Jim Neal" ("Neal") and when Medlock indicated that she knew Neal, Hardy informed her to tell Neal he was "looking for him because [he was] going to kill him and anybody that's with him[.]" He then departed in a faded blue car.

Later that same evening, Kay Evans ("Evans") was at home with her boyfriend, James Cornwell ("Cornwell"), when she heard a gunshot outside the home. She began to open the door to the garage when she saw Hardy wearing dark clothing and carrying a long gun. Evans testified she heard Hardy say, "[N]ow it's over, [Cornwell,]" before he ran back to a faded, dark-colored car and left the scene. She testified there was another person in the vehicle. Evans then went into the garage and discovered Cornwell had been shot in the face and neck. He later died from his injuries.

---

1. All rule references are to Missouri Court Rules (2012).

2. Unless otherwise specified, all statutory references are to RSMo 2000.

Medlock aided the police in preparing a composite picture of Hardy and it was published in the local newspaper. Hardy and his girlfriend, Christine Watkins ("Watkins"), were interviewed on July 2, 2005. The couple was interviewed separately and there were discrepancies between their stories. Namely, Watkins admitted they had visited Cornwell several days prior to the murder, and Hardy related he barely knew Cornwell such that he had never visited his home.

Several months later, on October 2, 2005, Watkins returned to the police department of her own volition to admit she had lied in her previous interview because she was scared of Hardy and she had information about the murder. In an interview with Detective Richard Hope ("Detective Hope"), she admitted Hardy was wearing dark-colored clothing the night of the murder, they had gone to Medlock's house and then to Cornwell's house, the shooting took place in front of Cornwell's garage, and she was present throughout the events. She further related she knew where the car was that was used on the night in question and that after the murder, she and Hardy wiped down the car for fingerprints, as well as disposed of the spent shotgun shells.[3] Further, Watkins informed the police they had purchased the shotgun used in the crime at Wal–Mart using Hardy's credit card, they had disassembled the gun following the crime, and had thrown it away at her former residence. She further gave them information as to where to locate spent shotgun shells at Hardy's place of business. Based on this information, Hardy was then arrested and charged as set out above.

At trial, Detective Hope testified about the interviews on July 21, 2005, which he conducted with both Hardy and Watkins, and about his interview with Watkins on October 2, 2005, when she first admitted knowledge of the crime. He reviewed the details of what Watkins told him and testified about how he compared that information to the evidence known to the police at that time. Watkins disclosed information and evidence that only a person who had truly been at the scene of the crime would know such as knowledge relating to the purchase of the gun, the location of the vehicle, and the existence of spent shotgun shells. During Detective Hope's recitation of his discussions with Watkins in October 2005, the only objection by counsel for Hardy came when the State attempted to introduce an actual transcript of the interview between Detective Hope and Watkins. Hardy's counsel objected on the basis that it was "a hearsay document" in that "Watkins can testify herself to what she told the detective" and he would not be able to "cross-examine that document[,]" which, as Watkins had yet to testify, lacked foundation. The objection was sustained by the trial court and the document was not admitted into evidence.

Further, on the day of trial, Medlock was asked on cross-examination about her inability to previously identify Hardy from law enforcement photos, as well as her statement that she had never seen the man before and had not seen him since that night. When defense counsel specifically asked her if she had seen the man since the incident, she responded, "Do you mean if they're here or I—[.]" A bench conference was then held and the trial court granted the State the opportunity to rehabilitate Medlock. On re-direct examination after the lunch break, Medlock then identified Hardy as the person who came

---

**3.** Watkins later led police to the vehicle and it matched the description given by both Med-lock and Evans.

to her door with a shotgun, although she had never identified him as such before.

During closing argument, counsel for Hardy challenged Medlock's inability to previously identify Hardy from photos. On rebuttal, the State noted defense counsel was surprised by Medlock's identification of Hardy:

Because at trial you had ... Medlock who for the first time since July 2nd, 2005[,] said, it's him. And the [defense] didn't know she was gonna say that. They tried to keep her from saying it. But she was brave enough to sit here and say, it's him. And you can believe her. And there's no reason not to believe her when you can't buy th[eir] story.

Thereafter, the State noted again that "this case for [Hardy] and for the State changed dramatically Friday when ... Medlock said it was him." The State noted it did not ask Medlock on direct examination to identify Hardy, but that

in between direct and cross, we had a lunch break. And in between the lunch break and cross she says, it's him. And I can't question her. And if [defense counsel] hadn't asked her a question, she would have never have gotten to identify [Hardy].

Sometimes things happen in trials that you don't expect, and for a prosecutor and a jury make a case. [Medlock] made this case.

Defense counsel did not object to these statements by the State.

At the close of the evidence, Hardy was convicted of the crimes set out above. He was sentenced to life in prison without the possibility of parole on the murder charge, and life in prison on the armed criminal action charge with the sentences to run concurrently. This conviction and sentence were affirmed on direct appeal to this Court.

On September 1, 2009, Hardy filed a *pro se* motion for post-conviction relief, pursuant to Rule 29.15. He was thereafter appointed counsel and on October 6, 2010, an amended motion was filed. The amended motion alleged, *inter alia,* that Hardy's trial counsel was ineffective for failing to object to Detective Hope's "hearsay testimony" and for failing to "object and request a mistrial" when the State in closing argument "improperly informed the jury that ... Medlock had made an out-of-court identification of [Hardy] ..."

An evidentiary hearing was then held on December 5, 2011. At the hearing, counsel for Hardy, Chad Picker ("Picker"), testified he did not object further to Detective Hope's testimony because he

wanted [Detective Hope] to testify to several parts of the story. Part of my trial strategy, as you probably saw from the transcript, was to limit the amount of time [Watkins] was on the stand. Because obviously, she was the eyewitness in the case, and it was very damaging evidence.

So that's why, with Detective Hope, I wanted certain things to come out in his cross-exam or on his direct exam about her story so I could later cross her on it and also Detective Hope.

Picker explained he chose to make a hearsay objection to the introduction of the hearing transcript because he "didn't want [the transcript] going into evidence where the jury would be able to review the document consistently[,]" and he wanted "them to be able to remember her testimony or forget parts of her testimony, hopefully."

On the issue of asking Medlock about whether she had seen the person who appeared at her door on the night of the murder since that time, he related:

Well, it was a calculated question. One, because of everything prior to trial. [Medlock] had not identified [Hardy] at any period of time. Even through depositions, she had not. During direct exam, she had not.

I had thought before trial that I was going to ask that question just because I had a way to deal with it. If she said, yes, I cannot identify him, then that was good for our case.

If she said she could all of a sudden identify him in the courtroom, I had ways to deal with that based on the fact that she had viewed previous lineups, never identified him. And I think I got that out through the cross-exam of the police officers and also through [Medlock] herself, that she had never previously identified him but all of a sudden that day in the courtroom she would be able to identify him. I thought that would cause her some credibility issues.

He related that when he asked the question of Medlock he "assumed" she would say she had not seen him "based on the deposition testimony and all the police investigation prior to that, plus during direct exam she never identified him or gave any indication that she recognized him." He testified he did not object to the State's references in closing argument because he did not want to draw more attention to Medlock's testimony and agreed it was a potentially objectionable statement.

The motion court issued its "JUDGMENT WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW" denying Hardy's request for relief on January 11, 2012. This timely appeal followed.

The issues presented for our determination are:

1. Did the motion court err in denying Hardy's claim that he received ineffective assistance of counsel as a result of Picker's failure to object to the testimony of Detective Hope?

2. Did the motion court err in denying Hardy's claim that he received ineffective assistance of counsel based on Picker's failure to object to statements in the State's closing argument?

### Standard of Review

We review a motion court's denial of a Rule 29.15 motion for post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009); Rule 29.15(k). Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made. *Id.* A post-conviction relief ruling is presumed correct, and Hardy had the burden of proving his grounds for relief by a preponderance of the evidence. *Id.;* Rule 29.15(i).

Further, we view the record in the light most favorable to the motion court's judgment, accepting as true all evidence and inferences that support the judgment and disregarding evidence and inferences that are contrary to the judgment. *O'Shea v. State*, 288 S.W.3d 805, 807 (Mo.App. S.D.2009); *see also Storey v. State*, 175 S.W.3d 116, 125 (Mo. banc 2005). "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant." *Hurst v. State*, 301 S.W.3d 112, 117 (Mo. App. E.D.2010).

Our review of claims relating to the ineffective assistance of trial counsel and the ineffective assistance of appellate counsel are governed by the same stan-

dard. *Tilley v. State,* 202 S.W.3d 726, 735 (Mo.App. S.D.2006). To prove ineffective assistance of counsel, a movant must demonstrate: (1) his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) his defense was prejudiced as a result of that deficiency. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Storey,* 901 S.W.2d 886, 893 (Mo. banc 1995). "To prove prejudice, the movant must show a 'reasonable probability that, but for counsel's [unprofessional] errors, the result of the proceeding would have been different.'" *State v. Shurn,* 866 S.W.2d 447, 468 (Mo. banc 1993) (quoting *State v. Ervin,* 835 S.W.2d 905, 929 (Mo. banc 1992)). "It is presumed that counsel is effective and that the burden is on the movant to show otherwise." *Forrest,* 290 S.W.3d at 708.

### Point I: Failure to Object to Detective Hope's testimony

### Analysis

■■■ "'A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value.'" *State v. Forrest,* 183 S.W.3d 218, 224 (Mo. banc 2006) (quoting *Smulls v. State,* 71 S.W.3d 138, 148–49 (Mo. banc 2002)). With that being said, "'[t]estimony of what another said offered in explanation of conduct rather than as proof of the facts in the other's statement is not inadmissible hearsay.'" *State v. Morgan,* 289 S.W.3d 802, 805 (Mo.App. S.D.2009) (quoting *State v. Murray,* 744 S.W.2d 762, 773 (Mo. banc 1988)).

■■■ Here, Detective Hope's testimony merely explained his conduct by showing why his investigative efforts had focused on Hardy as the likely culprit in Cornwell's murder. He testified that

through Watkins' information they located the vehicle used on the evening of the murder and they located information about the purchase of the shotgun at the local Wal–Mart. They further were able to recover spent shotgun shells from Hardy's business based on information provided by Watkins and Detective Hope arrested Hardy thereafter. It is well-established that testimony offered to explain an officer's conduct, rather than to prove the truth of the facts testified to, is not inadmissible hearsay. *State v. Allison,* 326 S.W.3d 81, 90 (Mo.App. W.D.2010). Accordingly, Detective Hope's testimony was not hearsay because it was not being offered for the truth of the matter asserted. As such, Picker had "no duty to object to admissible evidence or make other non[-]meritorious objections." *Davidson v. State,* 308 S.W.3d 311, 319 (Mo.App. E.D.2010).

■■■ Additionally, in arguing ineffectiveness of counsel, a movant must overcome a strong presumption that trial counsel's failure to object was sound trial strategy. *State v. Clay,* 975 S.W.2d 121, 135 (Mo. banc 1998). "'In many instances, seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.'" *Helmig v. State,* 42 S.W.3d 658, 679 (Mo. App. E.D.2001) (quoting *State v. Tokar,* 918 S.W.2d 753, 768 (Mo. banc 1996)). Here, Picker testified at the evidentiary hearing that it was a matter of trial strategy to not draw further attention to any testimony relating to Watkins and her admissions relating to the night in question. Hardy has failed to rebut the presumption that Picker's decision not to object was anything other than reasonable trial strategy.

■ We are further influenced that the motion court's decision to deny relief to Hardy was correct in that even if Detective Hope's testimony was erroneously admitted, the error was not prejudicial because the jury heard most of this same information directly from the testimony of Watkins and other witnesses. Therefore, Hardy was not prejudiced by the admission of cumulative testimony from Detective Hope. *See State v. Winegarner*, 87 S.W.3d 923, 925 (Mo.App. S.D.2002). The motion court did not err in its determination that Hardy did not receive ineffective assistance of counsel due to Picker's failure to object to Detective Hope's testimony. Point denied.

### Point II: Failure to Object to State's Closing Argument

#### Analysis

■ "The failure to object during closing argument only results in ineffective assistance of counsel if it prejudices the accused and deprives him of a fair trial." *Jackson v. State*, 205 S.W.3d 282, 290 (Mo. App. E.D.2006). This is because the State "is allowed to argue the evidence and all reasonable inferences from the evidence during closing arguments." *State v. Brown*, 337 S.W.3d 12, 14 (Mo. banc 2011).

■ Here, Hardy argues the State's rebuttal closing argument referred to facts outside the scope of the evidence. However, this argument falls flat in that it does not appear to this Court that the State did so because it merely referenced the difference in Medlock's testimony prior to the lunch break and after the lunch break. The State was clear, as is supported by the record, that Medlock did, in fact, identify Hardy as the man who came to her door late at night in July 2005. The comments made by the State were possibly inartful, but did not specifically mislead the jury nor could they be construed as depriving Hardy of a fair trial. Additionally, we note the State's comments were made in response to Picker's closing argument, which pointed out that Medlock had previously failed to identify Hardy. The State always has "considerable leeway" to make retaliatory arguments during closing argument, "and is permitted to retaliate to an argument made by the defense ... [.]" *Aaron v. State*, 81 S.W.3d 682, 697 (Mo. App. W.D.2002). The State's remarks during closing argument were within the bounds of a proper closing argument and defense counsel cannot be convicted of failing to make a non-meritorious objection thereto. *Davidson*, 308 S.W.3d at 319. The motion court did not err in finding there was no ineffective assistance of counsel on the part of Picker for failing to object to the State's closing argument. Point II is denied.

The judgment of the motion court is affirmed.

GARY W. LYNCH, P.J. and NANCY STEFFEN RAHMEYER, J., concur.