

# Missouri Court of Appeals

## Southern District

### Division One

KARL DAVID LAWRENCE,               )
                                   )
    Movant-Appellant,              )
                                   )
v.                                 )        No. SD36873
                                   )
STATE OF MISSOURI,                 )        **Filed:  July 2, 2021**
                                   )
    Respondent-Respondent.         )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden, Circuit Judge

*Before Rahmeyer, P.J., Francis, Jr., J., and Goodman, J.*

**<u>AFFIRMED</u>**

PER CURIAM.  A jury found Karl David Lawrence ("Movant") guilty of two counts of statutory sodomy in the first degree, and assessed punishment for each offense at imprisonment for fifteen years.  The trial court subsequently imposed the sentence assessed by the jury and ordered the terms of imprisonment to run concurrently.  Movant appealed, and we affirmed the trial court's judgment in ***State v. Lawrence***, 569 S.W.3d 545 (Mo.App. S.D. 2019) – our mandate issued April 3, 2019.

1

Subsequently, on June 19, 2019, Movant timely filed through retained counsel a motion for post-conviction relief under Rule 29.15, Missouri Court Rules (2021).[1] In the motion, Movant claimed that his trial attorneys were constitutionally ineffective in failing to (1) give the State notice of Movant's intent to rely on a defense of alibi, and (2) call Nellie McCullah, who was Movant's grandmother, as an additional alibi witness. Following an evidentiary hearing, the motion court denied Movant's motion for post-conviction relief. Movant appeals asserting in two points that the motion court clearly erred in denying the claims made in his motion for post-conviction relief. We reject Movant's points, and affirm the motion court's judgment.

**Standard of Review**

This Court's review of a motion court's overruling of a motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). A motion court's findings and conclusions are "clearly erroneous only if this Court is left with a definite and firm impression that a mistake has been made." *Mallow v. State*, 439 S.W.3d 764, 768 (Mo. banc 2014).

. . . .

To establish ineffective assistance of counsel, a movant must prove "by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation and (2) the movant was prejudiced by that failure." *Dorsey v. State*, 448 S.W.3d 276, 286–87 (Mo. banc 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If a movant fails to satisfy either prong of the *Strickland* test, he or she is not entitled to post-conviction relief. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).

To satisfy the performance prong, movants "must overcome the strong presumption that counsel's conduct was reasonable and effective." *Johnson v. State*, 406 S.W.3d 892, 899 (Mo. banc 2013). This

---

[1] Rule 29.15(m). Movant's sentence was pronounced January 5, 2018. We have independently verified the timeliness of Movant's motion for post-conviction relief. *See* **Moore v. State**, 458 S.W.3d 822, 825-26 (Mo. banc 2015); **Dorris v. State**, 360 S.W.3d 260, 268 (Mo. banc 2012). Motion counsel also represented Movant on direct appeal.

presumption is overcome when a movant identifies "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id*. (internal quotation omitted).

To establish *Strickland* prejudice, "a movant must show a reasonable probability that, but for counsel's errors, the outcome would have been different." *Dorsey*, 448 S.W.3d at 287. "A reasonable probability exists when there is a probability sufficient to undermine confidence in the outcome." *Id*. (internal quotation omitted).

. . . .

There is "a presumption that counsel's alleged omissions were sound trial strategy." *Storey v. State*, 175 S.W.3d 116, 125 (Mo. banc 2005) (internal quotation omitted).

**Hoeber v. State**, 488 S.W.3d 648, 653, 655, 659 (Mo. banc 2016).

"It is incumbent upon the movant in a post-conviction motion to prove his or her claims for relief by a preponderance of the evidence, Rule 29.15(i), and this Court presumes that the motion court's findings and conclusions are correct[.]" **Sanders-Ford v. State**, 597 S.W.3d 816, 818 (Mo.App. S.D. 2020). In addition, an appellate court "view[s] the record in the light most favorable to the motion court's judgment, accepting as true all evidence and inferences that support the judgment and disregarding evidence and inferences that are contrary to the judgment," **Hardy v. State**, 387 S.W.3d 394, 399 (Mo.App. S.D. 2012), and "defer[s] to the motion court's determinations of credibility, and the motion court is free to believe all, part, or none of the witnesses' testimony." **Tabor v. State**, 344 S.W.3d 853, 858 (Mo.App. S.D. 2011).

3

## Facts[2]

### *Trial*

In the underlying criminal case, Movant was charged with two counts of statutory sodomy in the first degree in Greene County, and was represented by three attorneys – James A. Pettit, Scott R. Pettit, and John A. Lewright.

At trial, Victim testified that, when she was thirteen, she and her three younger siblings, their father, stepmother, step-grandparents, and Movant (who was their stepmother's brother) were vacationing in Florida when a relative of the step-members of her family died. Victim testified that the family returned to her father and stepmother's house in Republic (not her step-grandparents' house), and that Movant remained at the house with Victim and her siblings while the other adults went to return the rental van. Victim testified that the charged sexual abuse occurred in the garage and a bedroom of the house in Republic while the other adults were returning the rental van.

Victim was born in June 1999, and was thirteen at the time of the charged sexual abuse,[3] and eighteen at the time of trial in late October and early November 2017. Victim first disclosed Movant's sexual abuse of her (which began before and continued after the charged sexual abuse) in January 2014 to a friend and then her mother.

---

[2] Unless an issue raised in the post-conviction proceeding requires the trial evidence to be viewed through a different lens (e.g., in reviewing an issue involving the trial court's failure to instruct the jury on self-defense), the trial evidence is viewed in the light most favorable to the jury's verdict. *Fisher v. State*, 359 S.W.3d 113, 115 n.1, 117 (Mo.App. W.D. 2011); *Hays v. State*, 484 S.W.3d 121, 125 n.1 (Mo.App. W.D. 2015); *Mallow v. State*, 439 S.W.3d 764, 766 (Mo. banc 2014). In resolving this appeal, we view the evidence at trial and at the evidentiary hearing on Movant's motion for post-conviction relief in the light most favorable to the outcome of those proceedings, but we include other evidence in our opinion to give context to Movant's points raised in this appeal.

[3] Technically, the information charged offenses during a period of time that overlapped with Victim's birthday, but the evidence at trial established that the charged offenses occurred after Victim's birthday.

After the prosecution completed its case-in-chief, Victim's stepmother testified that the family left for Florida in the rental van from her parents' house in Aurora, and returned to Aurora after her cousin was killed.[4]  On returning to Aurora, Victim's stepmother, the stepmother's parents, and Movant "all went to the funeral home" and Victim, her siblings, Victim's father and the stepmother's grandmother stayed at the step-grandparents' house.  On cross examination, Victim's stepmother acknowledged that she did not mention "getting dropped off" at her parents' house on returning from Florida to the State's investigator because she was not asked and did not "know what details he wanted from me."

Victim's father then testified similarly and added that after Movant, stepmother and their parents went to the funeral home, he returned the rental van and Victim and her siblings stayed with their step-great-grandmother.  On cross examination, Victim's father acknowledged that he did not tell the State's investigator Movant went to the funeral home on returning from Florida because he was not asked and did not know what the investigator wanted to know.  Movant's cousin died on July 9, 2012.

According to Victim, Movant lived "[a]bout two minutes" from his parents (Victim's step-grandparents), and "[a]bout 20, 25" minutes from Victim's father and stepmother.

Following an overnight recess, the State objected to any further alibi evidence on the ground that the defense failed to disclose an intent to rely on the defense of alibi.  The trial court ultimately granted the State's objection and precluded the defense from presenting any further alibi evidence (the trial court ruled that the witnesses "cannot

---

[4] According to the stepmother's mother, the house was located "outside" and "north" of Aurora in Lawrence County.  Movant lived "on an adjoining farm."

testify to . . . the alibi here today").[5] In so ruling, the trial court precluded Victim's step-grandparents from testifying about where in Missouri the family returned to from Florida and Movant's presence at the funeral home, and also precluded Movant from testifying that he (1) went to the funeral home with his relatives, (2) did not go to Victim's father and stepmother's house in Republic that day or the next two days, and (3) did not recall the next time he went to Victim's father and stepmother's house; but did permit Movant to testify that he was not at Victim's father and stepmother's house in Republic after the Florida trip, and could not remember the last time he went to Victim's father and stepmother's house before the Florida trip or the next time after the Florida trip. Movant's subsequent actual testimony before the jury was just that he did not remember the last time he went to Victim's father and stepmother's house in Republic before or after the Florida trip.

The jury was unaware that the trial court had limited the topics that the step-grandparents and Movant would be permitted to testify about.

In rebuttal, the State called two of Victim's younger siblings who testified that Movant was present when they "got back to [their father and stepmother's] house" from the Florida trip.

*Direct Appeal*

On direct appeal, we considered and rejected a claim that "the trial court erred in excluding testimony supporting an alibi defense." ***State v. Lawrence***, 569 S.W.3d at 549-50. In doing so, we observed:

---

[5] Though, before trial, the prosecution requested notice of any alibi defense, the defense did not give notice of any alibi defense. The trial court also denied defense counsel's subsequent requests for a mistrial.

Discovery sanctions are within the discretion of the trial court, and we will reverse only if the sanction results in fundamental unfairness to the defendant.

. . . .

As a matter of law, no abuse of discretion exists when the court refuses to allow the late endorsement of a defense witness whose testimony would have been cumulative [or] collateral, or if the late endorsement would have unfairly surprised the State.

. . . .

In determining whether the trial court abused its discretion, an appellate court must first consider what prejudice the State would have suffered as a result of the discovery violation and second, whether the remedy resulted in fundamental unfairness to the defendant.

. . . .

The second inquiry, and ultimately the standard by which the exclusion of a witness must be tested, is whether the sanction resulted in fundamental unfairness to the defendant. An appellate court finds fundamental unfairness when the exclusion of the testimony substantively alters the outcome of the trial. To determine whether the exclusion resulted in prejudice to the defendant, the facts and circumstances of the particular case must be examined including the nature of the charge, the evidence presented, and the role the excluded evidence would have played in the defense's theory. We also consider whether there is a reasonable explanation for the failure to disclose.

*Id.* at 549-51 (internal quotations and citations omitted). We concluded that "[g]iven that Defendant was able to present his alibi defense despite the trial court's ruling, Defendant has failed to demonstrate that his trial was fundamentally unfair[,]" and denied Movant's claim. *Id.* at 552.

*Post-Conviction Relief*

Movant's initial motion for post-conviction relief under Rule 29.15, was filed through counsel. In the motion, Movant claimed that trial counsel were ineffective in

7

failing to (1) give the State notice of Movant's intent to rely on a defense of alibi, and (2) call Nellie McCullah, Movant's grandmother, as an additional alibi witness.

At a hearing on Movant's motion, Movant's three trial attorneys testified as follows. James Pettit became involved in representing Movant "in March of 2017 as [Movant was] approaching trial."[6] James' father Scott also was involved in representing Movant. At some point, James' office made the decision to find another attorney to be lead counsel in the criminal case because James' office decided that the criminal case was "above [the office's] expertise." John Lewright then became lead counsel in the criminal case.

James thought it was "fair to say" that he "knew [Movant] had an alibi" "prior to trial[.]" Neither John, Scott nor James "ever disclosed that alibi to the prosecution prior to trial[,]" and, to James' knowledge, there was no "legitimate trial strategy" for not disclosing the alibi to the prosecution. The alibi evidence "was the main pillar of defense,"[7] and the exclusion of a part of that evidence "wasn't good." After a portion of the alibi evidence was excluded, the defense requested a mistrial.

Also, James understood before trial from Movant's family that Ms. McCullah babysat Victim and her siblings in Aurora (not Republic) "at the time that [Victim said] she was molested[,]" and was available as a witness. To James' knowledge, there was no legitimate trial strategy "for not calling her as an additional alibi witness."

Scott Pettit became involved in representing Movant in a Children's Division proceeding when Victim's allegations "first occurred" in 2014. An attorney with more

---

[6] James' "office" "had been working with [Movant] . . . since at least 2014 in . . . an appeal" of a Children's Division preponderance of the evidence finding arising from the allegations in the underlying criminal case.

[7] "[A] portion of [the] defense" also was that Victim was "making . . . up" her allegations because she did not "want[] to have to go see her father anymore."

experience was needed to handle the subsequent criminal charges at trial, and John "became involved[.]" Scott thought it was a "fair characterization" that the defense "knew that [Movant] had these alibi witnesses" before trial, and was not aware of any legitimate trial strategy "for not disclosing the alibi prior to trial[.]" Scott also was not aware of any legitimate trial strategy "for not calling [Ms.] McCullah as an alibi witness at trial[.]"

John Lewright agreed that Movant "had an alibi," and that alibi "was never disclosed in writing to the prosecution[.]" "[O]n hindsight, [John] should have declared that as an alibi." The failure to make an offer of proof at trial with Victim's step-grandmother was an "oversight." John requested a mistrial following the trial court's exclusion of additional alibi testimony because John's "gut told me that without it that we weren't going to be able to prove that [Victim] was not telling the truth." There was no legitimate trial strategy for not calling Ms. McCullah as an additional alibi witness. The "main motive" presented for why Victim was lying was Victim's desire to get "at her father" through Movant and her stepmother. It was also part of the defense strategy to show that "[w]e know [Victim's] lying because [Movant] had an alibi[.]" All the alibi witnesses would show that Victim went from Florida to Aurora and not Republic.[8]

Nellie McCullah, who was Movant's maternal grandmother, testified that she attended the trial, and, if asked, would have testified that (1) she was present at Movant's parents' house near Aurora when the family returned from Florida following a relative's death, (2) Movant, his parents and his sister went to the funeral home, (3) Victim and her siblings stayed with her at the house, and (4) Victim's father reinstalled the back seat in

---

[8] The alibi witnesses also would show that Movant went to the funeral home with his family and did not remain at his parents' house near Aurora with Victim and her siblings.

the rental van (which had been removed to accommodate luggage for the trip) and then returned the van.

Jack Lawrence, who was Movant's father, testified that, after learning of the death of a relative, the family returned from Florida to his house "[a]bout six miles north of Aurora," and that the family did not make a stop in Republic. John Lewright knew before trial that this would be Jack's testimony and, also, that Jack would testify he went with Movant to the funeral home. Before trial, Jack also asked John about Ms. McCullah and "said she babysat the kids, the girls, . . . while we went to the funeral home." John replied "that's an overkill, we don't need that."

Connie Lawrence, who was Movant's mother, testified that, if asked at trial, she would have testified:

> That we drove straight through [to Aurora] due to a death. When we got to the house, Jack, [Movant], Carla [(who was Movant's sister)], and myself got out of the car, went to the funeral home to meet Jack's brother and family, and left [Victim's father] and my mother at the house. My mother babysat the four kids, and [Victim's father] returned the rental van that we had.

Connie did not testify as stated at trial because the trial court excluded that portion of her intended testimony. Connie told John Lewright this information before trial.

Carla Wade, who was Movant's sister and, at the time of the offenses and trial, the wife of Victim's father, testified that she "shared with [John Lewright] multiple times" before trial her knowledge of the family's return from Florida after a relative's death.

Raymond Wade, who was Victim's father and Movant's brother-in-law, testified that he had discussed his trial testimony about the return trip from Florida to Aurora after a relative's death with John Lewright and also James Pettit before trial.

10

"[F]or quite some time prior to trial[,]" Movant had told John Lewright that he had traveled "from Florida to Aurora and then to the funeral home with [his] parents and [his] sister[,]" and intended to so testify. Movant was "in agreement with [his] lawyers that [his] trial strategy was to show [he] had an alibi[.]" John told Movant "it was a home run."

**Analysis**

*Point I*

In his first point, Movant contends that the motion court clearly erred in denying his claim that trial counsel were constitutionally ineffective in failing to give the State notice of Movant's intent to rely on a defense of alibi. The motion court concluded that Movant failed to show either that trial counsel's performance was constitutionally deficient, or prejudiced Movant, but primarily focused on the motion court's conclusion that Movant failed to show additional alibi witnesses (including Movant's expanded testimony) would have created a reasonable probability the outcome of the trial would have been different.

A fatal flaw in Movant's argument on this point is that, on direct appeal, we reviewed the trial court's exclusion of the same alibi testimony for an abuse of discretion, and determined that, in the circumstances of this case, Movant failed to demonstrate the exclusion resulted in fundamental unfairness to Movant.

In **Deck v. State**, 68 S.W.3d 418 (Mo. banc 2002), our high court discussed the differences in standards of review for reversible prejudice (1) from preserved error on direct appeal, (2) from error in a post-conviction relief proceeding, and (3) from plain error on direct appeal. **Id.** at 424-29. In a lengthy discussion, the Court stated in part:

"Appellate review of preserved error [on direct appeal] is for prejudice, not mere error, and [it] will reverse only if the error is so prejudicial that it deprived the defendant of a fair trial." *Id.* at 427 (internal citation and quotations omitted; alteration [it] in original). The Court also stated that "[t]he standard for finding prejudice in the context of preserved error is lower than the standard for finding error under *Strickland*, and both are lower than the plain error standard." *Id.* at 427 n.5.

Subsequently, in *McClure v. State*, 543 S.W.3d 54 (Mo.App. W.D. 2018), the Western District of this Court, in the context of an alleged error reviewed on direct appeal for abuse of discretion, further discussed the difference between the standards of review for reversible prejudice (1) from preserved error on direct appeal and (2) from error in a post-conviction relief proceeding. In the course of the discussion, the Western District stated:

> Without addressing trial counsel's performance, we conclude that finding no prejudice on direct appeal precludes finding prejudice in the present post-conviction proceeding.
> It is well-established that "[i]ssues decided upon direct appeal cannot be relitigated on a theory of ineffective assistance of counsel in a post-conviction proceeding." *Leisure v. State*, 828 S.W.2d 872, 874 (Mo. banc 1992). On direct appeal, this court found that "[b]ecause T.S. actually testified and was available for cross-examination, even if the challenged statements were erroneously admitted under section 491.075, *McClure was not prejudiced*." *State v. McClure*, 482 S.W.3d 504, 506 (Mo. App. 2016) (emphasis added). In support, we cited *State v. Bright*, 782 S.W.2d 91, 92 (Mo. App. 1989) and *State v. Hankins*, 612 S.W.2d 438, 439-40 (Mo. App. 1981), two cases reviewing a trial court for abuse of discretion. *McClure* at 508.
> Abuse of discretion (for preserved error) is a lower standard of review than both *Strickland* and plain error review. *Deck v. State*, 68 S.W.3d 418, 427 n.5 (Mo. banc 2002). Thus, finding no prejudice under abuse of discretion review *a fortiori* precludes finding prejudice under a higher standard. *State v. Dennis*, 315 S.W.3d 767 n.2 (Mo. App. 2010) ("[u]pon a finding of no abuse of discretion, it logically follows that there is no plain error committed by the trial court"). This analysis is the corollary to our Supreme Court's ruling in *Deck v. State*, which held that

finding no plain error on direct appeal *does not* preclude finding prejudice under *Strickland*. *Deck* and *McClure* thus represent two aspects of one logical system. Under *Deck*, what is not prejudicial under the highest standard of review *can* still be prejudicial under a lower standard. In *McClure*, what is not prejudicial under the lowest standard *cannot* be prejudicial under a higher standard.

> *Leisure's* rule against relitigating issues decided on direct appeal did not operate in *Deck*, because the issue of *Strickland* prejudice was unsettled. That is, finding no plain error could not rule out finding error under *Strickland*. In *McClure*, our cited authority on direct appeal found no error under abuse of discretion review, logically precluding a finding of prejudice under *Strickland's* more exacting standard. The issue of *Strickland* prejudice was thus decided by logical implication on direct appeal and cannot be relitigated in the present proceeding.

*Id.* at 56-57 (footnote omitted).

Although, in this case, a portion of our review on direct appeal for reversible prejudice under an abuse of discretion standard involved determining whether prejudice to Movant resulted in "fundamental unfairness," we believe fundamental unfairness remains consistent with the standard for reversible prejudice from preserved error on direct appeal – i.e., that the error is so prejudicial that it deprived the defendant of a fair trial – and does not create a standard for prejudice from this specific type of preserved error on direct appeal that is more onerous than the post-conviction relief standard for prejudice.[9] Consequently, fundamental unfairness in the context of a preserved error on

---

[9] Other than directing us to the words used to describe fundamental unfairness (i.e., trial court action that substantively alters the outcome of the trial), Movant does not refer us to any authority that indicates those words create a heightened standard of prejudice on direct appeal that is more onerous that the post-conviction relief standard for prejudice, and we are not aware of any authority that does so. Movant's argument essentially is that review of the exclusion of a defense witness on direct appeal for fundamental unfairness under an abuse of discretion standard for preserved error creates a fourth standard of review for reversible prejudice that the prejudice is outcome determinative (i.e., more likely than not changed the outcome of the trial). In other words, Movant argues that prejudice from preserved error in excluding a defense witness that is reviewed for fundamental unfairness under an abuse of discretion standard must meet the standard of review for plain error prejudice. Movant also argues that the cumulative nature of alibi testimony should not preclude a finding of prejudice under any standard of review less onerous than plain error prejudice when alibi is the main issue and turns on the weight of the evidence. Although we appreciate Movant's argument that fundamental unfairness creates a fourth standard of review for preserved prejudice, we cannot accept the argument as we believe the argument directly conflicts with well-settled principles of Missouri law.

13

direct appeal is a lower standard of review for reversible prejudice than the standard for reversible prejudice in a post-conviction relief proceeding. In light of the fact we found no reversible prejudice from the exclusion of additional alibi testimony on direct appeal, that exclusion cannot support a finding of prejudice in this post-conviction relief proceeding. Movant's point is denied.

*Point II*

In his second point, Movant contends that the motion court clearly erred in denying his claim that trial counsel were constitutionally ineffective in failing to call Nellie McCullah, Victim's step great-grandmother, as an additional alibi witness. The motion court concluded that Movant failed to show either that trial counsel's performance was constitutionally deficient, or prejudiced Movant. These conclusions were not clearly erroneous.

Again, although we understand Movant's argument that the jury was deprived of additional alibi testimony by trial counsels' failure to call Ms. McCullah, an additional member of Movant's family who would have testified to the same alibi as Victim's father, Movant and three other family members, such a failure was not constitutionally deficient. As noted, if trial counsel had called Ms. McCullah to testify at trial, her alibi testimony almost certainly would have been excluded by the trial court, an exclusion that we found on direct appeal was not reversible error. Movant's second point is denied, and the motion court's judgment is affirmed.